UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| STEPHANIE SINCLAIR | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| ZIFF DAVIS, LLC, | ) | |
| | ) | |
| *Defendant*. | ) | DEMAND FOR JURY TRIAL |
| | ) | |
| | ) | |

**COMPLAINT**

Comes now the Plaintiff, Stephanie Sinclair, and alleges as follows:

### I.  INTRODUCTION

1. This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et. seq. (the "Copyright Act").

2. Plaintiff alleges each Defendant is liable for one (1) count of direct and willful copyright infringement in violation of 17 U.S.C. §§ 106 and 501.

### II.  PARTIES

3. Plaintiff Stephanie Sinclair ("Sinclair") is a citizen of the United States, a resident of the state of New York, and maintains her principal place of business in the state of New York.

4. Defendant Ziff Davis, LLC ("Ziff Davis") is and was at all relevant times an active foreign business company from Delaware duly authorized with its principal place of business in the state of New York (NYS DOS ID #: 4511407), with the business address: 28 East

28th Street, New York, NY 10016, owning and operating the commercial online magazine "Mashable" at mashable.com.

### III.  JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (copyrights).

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391 because Defendant's principle place of business can be found in this District.  Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1400(a) (venue for copyright cases) because all Defendants may be found in this District.

7. This Court has *in personam* jurisdiction over Defendants because the Defendants availed themselves of the privileges of conducting business in this district and the State of New York and incurred a benefit from such infringement, thus it is reasonable for Defendants to submit to the jurisdiction of a New York federal district court.

### IV.  FACTUAL BACKGROUND

8. Plaintiff Sinclair is a freelance photojournalist well-known for gaining unique access to the world's most sensitive gender and human rights issues, such as female genital mutilation, self-immolation, and, most notably, child marriage.

9. Plaintiff Sinclair has spent significant time and money amassing her twenty-year body of work, regularly risking life and limb to photograph people and events in dangerous circumstances such as war zones and similarly hostile environments.

10. Plaintiff Sinclair covered the United States' invasion of Iraq as a unilateral (non-embedded) journalist while an employee of the *Chicago Tribune* in 2003. She subsequently moved to Iraq to continue covering the war as a freelance photojournalist. She later moved to

Beirut, Lebanon, then, after covering the region for six years, to New York, from where she continues to operate.

11.     Plaintiff Sinclair is a regular contributor to publications such as *National Geographic*, the *New York Times*, the *New York Times Magazine*, *Time*, *Newsweek*, *Stern*, *GEO*, and *Marie Claire*.

12.     Plaintiff Sinclair has partnered with many notable institutions and organizations in her work on the child marriage issue including the United Nations Population Fund (UNFPA), the U.S. Department of State, USAID, the government of Canada, the UK's Department for International Development (DFID), Human Rights Watch, and Plan International.

13.     Plaintiff Sinclair has been nominated for an Emmy Award, was a Pulitzer Prize winner in 2000 while working for the *Chicago Tribune*, and has won numerous photojournalism industry awards including an unprecedented three Vias D'or and, most recently, the *International Women's Media Foundation*'s Anja Niedringhaus Courage in Photojournalism Award.

14.     Plaintiff Sinclair regularly licenses her photographs to clients for use in publications and on websites.  To this end, Plaintiff owns and maintains a publically-searchable website (www.StephanieSinclair.com) to showcase her images and invite offers from potential licensors.  The fees collected from this licensing constitute a sizeable portion of Plaintiff's livelihood.

15.     Defendant Ziff Davis is a technologically-focused digital media and advertising company in the business of producing and distributing audiovisual content and selling advertising space, marketing, data, and licensing services on their own advertising network (NetShelter), and across their online brands and print titles, which include PC Mag, IGN, AskMen, Offers.com, Speetest, TechBargains, and more.  According their website, Defendant

3

Ziff Davis publishes their content in twenty-five (25) languages across one hundred and fourteen (114) countries.

16. Among Defendant Ziff Davis' wholly owned media properties is Mashable Inc., (www.mashable.com), a news, entertainment, and lifestyle company focused on technology and digital culture.  Mashable operates on a variety of platforms, but their flagship property is their website, www.mashable.com.

17. Mashable's website, www.mashable.com, currently garners over one million three hundred thousand (1,300,000) unique daily viewers, and almost two million (2,000,000) daily page views according to website traffic monitoring organization, Website Informer (www.websiteinformer.com).  At the time of this filing, Mashable also had over six million seven hundred thousand (6,700,000) followers of its English language Facebook page and over nine million eight hundred thousand (9,800,000) followers of its Twitter account.

18. Defendant Ziff Davis generates revenue, in part, through advertisements and targeted promotional placements on its network of cross-platform digital media properties, which includes www.mashable.com.  As web traffic and download rates across these platforms increase, Defendant Ziff Davis is able to charge advertisers higher rates for placing advertisements in front of their millions of followers, subscribers, downloaders, and casual viewers.

19. On or about March 11, 2016, Plaintiff Sinclair was contacted via email by an employee or agent of Mashable, SaVonne Anderson, who sought Plaintiff Sinclair's permission to use one of Plaintiff Sinclair's copyrighted images in an article on female photographers to be published to www.mashable.com (emails identified as Exhibit "A" attached hereto).   Plaintiff Sinclair replied to Ms. Anderson the same day asking the amount Mashable proposed to license

the image in question.  Upon Ms. Anderson's prompt reply that Mashable would only be offering fifty ($50) dollars for the licensing rights to the image, Plaintiff Sinclair did not communicate with Ms. Anderson that she accepted Mashable's $50.00 offer.

20. On or about March 16, 2016, Mashable, without consent and permission, republished Plaintiff Sinclair's image in an article about female photographers on www.mashable.com, authored by SaVonne Anderson.

21. Beyond the three (3) emails exchanged between Plaintiff Sinclair and Ms. Anderson on March 11, 2016 in Exhibit A, Plaintiff Sinclair never accepted Mashable's offer regarding image licensing for this or any other Mashable article.  Thus, at no time prior to, concurrent with, or subsequent to publishing the article did Plaintiff Sinclair give to Ms. Anderson and Mashable permission to republish any of Plaintiff Sinclair's images.

22. On or about December 20, 2017, Plaintiff Sinclair discovered that Defendant Ziff Davis, owner of the Mashable web site, improperly republished Plaintiff's copyrighted photo in an article on Defendant's website, www.mashable.com, at the URL: http://mashable.com/2016/03/19/female-photojournalists-social-justice/#RNOCt.k6Vgq3 (identified as Exhibit "B" attached hereto).

22. The nature of Defendant Ziff Davis' use of Plaintiff Sinclair's copyrighted photo on mashable.com suggests that Plaintiff supported the republishing and usage of the photo, thereby damaging Plaintiff's reputation as purveyor of high-quality images to high-end, issue driven clients and partners (examples named above), and weakening Plaintiff's bargaining position in future licensing agreements with said clients.

23. On or about January 19, 2018, Plaintiff Sinclair demanded Defendant Ziff Davis take the photo offline and compensate her for the market value of her photograph.

24. Defendant Ziff Davis initially refused to remove the image from mashable.com despite being put on notice of the prior rejection of the licensing offer by Mashable, and Defendant refused to compensate Plaintiff for the usage rights, which is evidence of intentional infringement of Plaintiff's copyrighted image given that Defendant was on actual notice that it did not have permission to publish the photo on its web site.

## V. ALLEGATIONS

### COUNT 1: INGRINGEMENT OF COPYRIGHTS (17 U.S.C. §§ 106, 501)

25. Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above.

26. Plaintiff is, and at all relevant times has been, the copyright owner or licensee of exclusive rights under United States copyright with respect to certain copyrighted photographic images, including but not limited to the copyrighted image identified as Exhibits "B" attached hereto, which is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights (the "Copyrighted Image"), identified as Exhibit "C" attached hereto, titled "Child, Bride, Mother/Child Marriage in Guatemala," holding Registration Number VA 1-986-057, with the effective date of October 23, 2015.

27. Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Copyrighted Images and to distribute the Copyrighted Images to the public.

28. On information and belief, Plaintiff alleges that Defendant infringed Plaintiff's copyright directly, when they uploaded the Copyrighted Image to their website, effectively distributing the image to the public and/or making one of the Copyrighted Images available for distribution to others through Defendant's website.

29. Defendants have violated Plaintiff's exclusive rights of reproduction and distribution of her image. Defendant's actions constitute willful infringement of Plaintiff's copyrights and exclusive rights under copyright.

30. Defendant's actions infringed on Plaintiff's Copyrighted Images and improperly associated Plaintiff with Defendant's brand.

31. Defendant asked permission for the use of Plaintiff's Copyrighted Image, but Plaintiff refused Defendant's request, pursuant to Plaintiff's exclusive rights in the Copyrighted Image. Nevertheless, Defendant published Plaintiff's Copyrighted Image in defiance of Plaintiff's wishes and in violation of Plaintiff's exclusive rights.

32. Plaintiff is informed and believes that the foregoing acts of infringement have been willful and intentional, in total disregard of and with indifference to the rights of Plaintiff.

33. Plaintiff is informed and believes that the foregoing acts of infringement have helped bolster traffic to the Defendant's website(s), thereby helping establish and/or increase advertising rates on the website, resulting a direct financial benefit to Defendant.

34. As a result of Defendant's infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c) for Defendant's infringement of each of the Copyrighted Images. Plaintiff further is entitled to attorney's fees and costs pursuant to 17 U.S.C. § 505.

35. In the event the subject image remains posted or associated with Defendants, the conduct of Defendants are causing, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendant from further infringing Plaintiff's

copyrights, and ordering Defendant to destroy all copies of images made or used in violation of Plaintiff's exclusive rights and to remove images from any site or blog that Defendant controls.

## VI. DAMAGES

36. Defendant's conduct caused damages as follows:

   a. Copyright infringed on Plaintiff's image (statutory damages of $30,000 for each infringement or alternatively $150,000 for each willful infringement) pursuant to 17 U.S.C. § 504.

## VI. JURY TRIAL DEMANDED

37. Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs respectfully demand a trial by jury of all the claims asserted in this Complaint so triable.

## VII. RELIEF REQUESTED

38. **WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment on her behalf adjudging and decreeing that:

   A. For an injunction providing:

   "Defendant shall be and hereby is enjoined from directly or indirectly infringing Plaintiff's rights under federal or state law in the Copyrighted Images, whether now in existence or later created, that is owned or controlled by Plaintiff ("Plaintiff's Images"), including without limitation by using the Internet or any online media distribution system to reproduce (i.e. download) any of Plaintiff's Images, to distribute (i.e. upload) any of Plaintiff's Images, or to make any of Plaintiff's Images available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff. Defendant also shall destroy all copies of Plaintiff's Images that Defendant

8

has downloaded onto any computer hard drive or server and to remove any Images from the internet that Defendant has control or ownership interest in."

B. For Plaintiff to be awarded either: (i) Plaintiff's actual damages and Defendant's profits, gains, or advantages of any kind attributable to Defendant's infringement of Plaintiff's Copyrighted Images; or (ii) alternatively, statutory damages of up to $150,000.00 for each instance of infringement of Plaintiff's Copyrighted Images pursuant to 17 U.S.C. § 504.

C. For Defendant to be required to account for all profits, income, receipts, or other benefits derived by Defendant as a result of its unlawful conduct.

D. For Plaintiff's costs and expenses in this action, including reasonable attorney's fees incurred herein, pursuant to 17 U.S.C. § 505.

E. For Plaintiff to be awarded pre-judgment interest.

F. For such other and further relief as the Court may deem just and proper.

Dated: This 29th day of January 2018.

                        Respectfully submitted,

                        By: /s/ James Bartolomei Esq.
                        _____
                        James Bartolomei Esq.
                        Duncan Firm, P.A.
                        Of Counsel
                        900 S. Shackleford Road, Ste. 725
                        Little Rock, Arkansas 72211
                        501-228-7600 phone
                        501-228-0415 fax
                        jim@duncanfirm.com

                        and

Bryan D. Hoben, Esq.
420 S. Riverside Drive, Suite 158
Croton on Hudson, NY 10520
(347) 855-4008  phone
(914) 992-7135  fax
 bryan@hobenlaw.com