UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------x

STEPHANIE SINCLAIR,

                Plaintiff,

              v.

ZIFF DAVIS, LLC, and MASHABLE, INC.,

              Defendants.

18-CV-790 (DAB)

------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**


DAVIS WRIGHT TREMAINE LLP
James Rosenfeld
1251 Avenue of the Americas, 21st Floor
New York, NY  10020
Tel:  212-489-8230
jamesrosenfeld@dwt.com

ZIFF DAVIS, LLC
George Wukoson
114 Fifth Avenue
New York, NY 10011
Tel: 646-397-0874
george_wukoson@ziffdavis.com

*Attorneys for Defendants Ziff Davis, LLC,
and Mashable, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

I.      FACTUAL BACKGROUND ..................................................................................... 2

        A.      The Parties ................................................................................................... 2

        B.      Embedding ................................................................................................... 3

        C.      Instagram ..................................................................................................... 5

        D.      The Photo and the Article ........................................................................... 8

II.     ARGUMENT ............................................................................................................ 10

        A.      STANDARDS OF REVIEW .................................................................... 10

        B.      MASHABLE HOLDS A SUB-LICENSE TO THE INSTAGRAM POST,
                A "COMPLETE DEFENSE" TO PLAINTIFF'S CLAIMS ................................ 12

        C.      PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF AGAINST
                ZIFF DAVIS .......................................................................................... 14

CONCLUSION ................................................................................................................... 16

4830-9090-8515v.5 0098504-000011

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applebaum v. Lyft, Inc.*,
   263 F. Supp. 3d 454 (S.D.N.Y. 2017) ................................................................................13

*Ariel (UK) Ltd. v. Reuters Grp. PLC*,
   No. 05 CIV. 9646 (JFK), 2006 WL 3161467 (S.D.N.Y. Oct. 31, 2006), *aff'd*,
   277 F. App'x 43 (2d Cir. 2008) ........................................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .....................................................................................................10, 11

*Boarding School Review, LLC v. Delta Career Educ. Corp.*,
   No. 11 Civ. 8921, 2013 WL 6670584 (Mar. 29, 2013) .......................................................11

*BWP Media USA, Inc. v. Gossip Cop Media, LLC*,
   87 F. Supp. 3d 499 (S.D.N.Y. 2015) ................................................................................10

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
   69 F. Supp. 3d 342 (S.D.N.Y. 2014) ................................................................................11

*Dauman v. Hallmark Card, Inc.*,
   No. 96 CIV. 3608 (JFK), 1998 WL 54633 (S.D.N.Y. Feb. 9, 1998) ...............................14, 15

*Flava Works, Inc. v. Gunter*,
   689 F.3d 754 (7th Cir. 2012) ............................................................................................1

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) ...............................................................................13

*Goldman v. Breitbart News Network, LLC*,
   No. 17-CV-3144 (KBF), 2018 WL 911340 (S.D.N.Y. Feb. 15, 2018) ..................................2

*Grady v. Iacullo*,
   No. 13-CV-00624-RM-KMT, 2016 WL 1559134 (D. Colo. Apr. 18, 2016) ..........................1

*Graham v. James*,
   144 F.3d 229 (2d Cir. 1998) ...........................................................................................12

*Heston v. Farmers Ins. Grp.*,
   160 Cal. App. 3d 402, 206 Cal. Rptr. 585 (Ct. App. 1984) ...............................................13

*Lasica v. America Online, Inc.*,
   No. CV 15-4230, GW (FFMx), 2015 WL 12791495 (C.D. Cal. Sept. 3, 2015) ....................12

4830-9090-8515v.5 0098504-000011

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*,
No. 13 C 4664, 2014 WL 3368893 (N.D. Ill. July 8, 2014) ...................................2

*Live Face on Web, LLC v. Biblio Holdings LLC*,
No. 15 Civ. 4848 (NRB), 2016 WL 4766344 (S.D.N.Y. Sept. 13, 2016)
(Buchwald, J.) .......................................................................................................1

*Mayimba Music, Inc. v. Sony Corp. of Am.*,
No. 12 Civ. 1094 AKH, 2014 WL 5334698 (S.D.N.Y. Aug. 19, 2014), *order
suspended*, No. 12 Civ. 1094 AKH, 2015 WL 6917260 (S.D.N.Y. Apr. 30,
2015) ....................................................................................................................14

*Moss v. Infinity Ins. Co.*,
No. 15-CV- 03456-JSC, 2016 WL 7178559 (N.D. Cal. Dec. 9, 2016) ..................11

*MyPlayCity, Inc. v. Conduit Ltd.*,
No. 10 Civ. 1615(CM), 2012 WL 1107648 (S.D.N.Y. Mar. 30, 2012),
*adhered to on recons.*, 2012 WL 2929392 (S.D.N.Y. July 18, 2012) .....................2

*Patsy's Italian Restaurant, Inc. v. Banas*,
575 F. Supp. 2d 427 (E.D.N.Y. 2008), *aff'd*, 658 F. 3d 254 (2d Cir. 2011)...........11

*Pearson Educ., Inc. v. Ishayev*,
963 F. Supp. 2d 239 (S.D.N.Y. 2013).....................................................................2

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) ...........................................................................1, 2

*Person v. Google Inc.*,
456 F. Supp. 2d 488 (S.D.N.Y. 2006)....................................................................13

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
602 F.3d 57 (2d Cir. 2010).....................................................................................10

*Republic Bank v. Marine Nat'l Bank*,
45 Cal. App. 4th 919, 53 Cal. Rptr. 2d 90 (1996)..................................................13

*Schwartz v. HSBC Bank USA, N.A.*,
160 F. Supp. 3d 666 (S.D.N.Y. 2016).....................................................................11

*Sira v. Morton*,
380 F.3d 57 (2d Cir. 2004).....................................................................................11

*Spinelli v. Nat'l Football League*,
96 F. Supp. 3d 81 (S.D.N.Y. 2015) ........................................................................12

*Veronica Foods Co. v. Ecklin*,
No. 16-CV- 07223-JCS, 2017 WL 2806706 (N.D. Cal. June 29, 2017) ................11

4830-9090-8515v.5 0098504-000011

*Viacom Int'l, Inc. v. YouTube, Inc.*,
    676 F.3d 19 (2d Cir. 2012)......................................................................................16

*Wang v. Pataki*,
    396 F. Supp. 2d 446 (S.D.N.Y. 2005).....................................................................11

**Statutes**

17 U.S.C. § 106(5) ......................................................................................................1, 2

17 U.S.C. § 512(c) .....................................................................................................15, 16

Fed. R. Civ. P. 12(b)(6)...................................................................................................1

4830-9090-8515v.5 0098504-000011

Defendants Ziff Davis, LLC ("Ziff Davis") and Mashable, Inc. ("Mashable") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Stephanie Sinclair's ("Plaintiff") Second Amended Complaint [Doc. No. 15] ("Second Amended Complaint" or "2d Am. Compl.") under Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

When a user, like Plaintiff, joins the photograph- and video-sharing social media platform Instagram, the user enters into a contract with Instagram, memorialized in Instagram's Terms of Use and other integrated agreements. Under these agreements, the user licenses to Instagram any photographs she shares on Instagram while her Instagram account is set to "public." She further agrees that those images may be sublicensed by Instagram to third-party users of Instagram's services, including via its function allowing third parties, like Defendants, to "embed" Instagram content—i.e., publish Instagram content from Instagram's servers in an Instagram frame—on the third-party users' websites. This ability to share and re-share content is essential to the "social" nature of social media, and indeed to the interconnected nature of the World Wide Web.

Here, Plaintiff uploaded the photograph at issue on to her own Instagram account. She does not claim that Mashable posted a copy of that photograph directly on its own website. Instead—as Plaintiff has amended the Complaint to make clear—Mashable posted "embed code" on its site which "embedded" the image in a Mashable article. Plaintiff could have avoided this so-called "display"[1] of the image simply by posting the image privately on Instagram or posting

---

[1] Whether "embedding" an image is a "display" within the meaning of Section 106 of the Copyright Act, 17 U.S.C. § 106(5), is a legal issue on which courts have disagreed. The Ninth Circuit, the Seventh Circuit and numerous lower courts have held that embedding and the similar concepts of "framing" and "in-line linking" are not exercises of the public display right, applying what is sometimes called the "server test" for copyright infringement liability. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159–61 (9th Cir. 2007); *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 756 (7th Cir. 2012); *Live Face on Web, LLC v. Biblio Holdings LLC*, No. 15 Civ. 4848 (NRB), 2016 WL 4766344, at *4 (S.D.N.Y. Sept. 13, 2016) (Buchwald, J.); *Grady v. Iacullo*,

the image on another platform (such as her own website at StephanieSinclair.com) rather than

Instagram.  Instead, she posted the image publicly on Instagram, authorizing the embedding in

which Mashable engaged.  Mashable did not infringe Plaintiff's copyright by posting an article

embedding the image as authorized.

Independently, Ziff Davis is not properly a party in this action, and Plaintiff has failed to

make any allegations that justify imposition of liability on it.

## I.    FACTUAL BACKGROUND

### A.    The Parties

According to the Second Amended Complaint, Plaintiff is a professional photojournalist.

---

No. 13-CV-00624-RM-KMT, 2016 WL 1559134, at *5 (D. Colo. Apr. 18, 2016); *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, No. 13 C 4664, 2014 WL 3368893, at *5 (N.D. Ill. July 8, 2014); *MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615(CM), 2012 WL 1107648, at *12 (S.D.N.Y. Mar. 30, 2012), *adhered to on recons.*, 2012 WL 2929392 (S.D.N.Y. July 18, 2012). This Court recently rejected the server test, in a decision that has been certified to the Second Circuit for interlocutory review.  *See Goldman v. Breitbart News Network, LLC*, No. 17-CV-3144 (KBF), 2018 WL 911340, at *9–10 (S.D.N.Y. Feb. 15, 2018); Memorandum Decision & Order, dated Mar. 19, 2018 [Doc. No. 181], *Goldman v. Breitbart News Network, LLC*, No. 17-CV-3144 (KBF).  However, that issue is *not* dispositive of this case, where the defense is *not* that the embedding of an image is not a display and therefore not an infringement, but that Plaintiff *authorized* Instagram to sublicense her non-private images to third-party websites such as Mashable. *See Goldman*, 2018 WL 911340, at *10 (noting "a number as of yet unresolved strong defenses to liability separate from this issue," including "whether plaintiff effectively released his image into the public domain when he posted it to his Snapchat account" and "questions as to licensing and authorization").  Nevertheless, because the Second Circuit may reverse in the *Goldman* case and rule that embedding is *not* a display, Defendants reserve the right to argue that no infringement took place because (1) they did not display the image, and (2) Plaintiff has not adequately pled a violation of the reproduction right, the distribution right, or any other cognizable right under the Copyright Act.  *See Pearson Educ., Inc. v. Ishayev*, 963 F. Supp. 2d 239, 251 (S.D.N.Y. 2013) ("Because hyperlinks do not themselves contain the copyrighted or protected derivative works, forwarding them does not infringe on any of a copyright owner's five exclusive rights under § 106.); *MyPlayCity*, 2012 WL 1107648, at *12 ("In the internet context, [distribution] means a transfer of a file from one computer to another.  Because the actual transfer of a file between computers must occur, merely providing a 'link' to a site containing copyrighted material does not constitute direct infringement of a holder's distribution right." (internal quotation marks and citation omitted); *Perfect 10, Inc.*, 508 F.3d at 1162 (embedding an image does not constitute "distribution" of the image because a party that embeds an image does not actually disseminate a copy of the image).

4830-9090-8515v.5 0098504-000011

(2d Am. Compl. ¶ 9.)  She owns the copyright in a photograph titled "Child, Bride, Mother/Child Marriage in Guatemala," registered with the United States Copyright Office under Registration Number VA 1-9860957, and published on February 6, 2015 (the "Photo"). (2d Am. Compl. ¶ 32, Ex. C.)

Mashable is a corporation that owns, operates and publishes the website located at the domain name Mashable.com, which domain name it owns. (*See* Mashable, "About," https://mashable.com/about/ ("Mashable is a global, multi-platform media and entertainment company. Powered by its own proprietary technology, Mashable is the go-to source for tech, digital culture and entertainment content for its dedicated and influential audience around the globe. ©2005-2018 Mashable, Inc."); DomainTools, "Whois Record for Mashable.com," http://whois.domaintools.com/mashable.com (showing Mashable owns the domain Mashable.com); 2d Am. Compl. ¶¶ 5, 17 (alleging Mashable operates the Mashable.com website).)  Mashable, an independent legal entity, is a subsidiary of Ziff Davis. (2d Am. Compl. ¶¶ 17–18.)

### B.     Embedding

A person who creates web content may "embed" content stored on a third party's computer systems by adding specific and unique "embed code" to the HTML instructions on its own site. (2d Am. Compl. ¶¶ 36–38.)  Embed code works like a hyperlink. (*Id.* ¶ 39.)  When a viewer visits that particular web page, the code refers the viewer's browser to the servers of a third party, causing content that resides and remains on that third party's servers to appear on the screen as if it were posted on that web page. (*Id.*)

Many internet platforms that host user-created content, including social media sites like YouTube, Twitter, Tumblr, Facebook, and Instagram, provide their users with embed code, with which those other users may embed their content either on the social media platform or on other

sites.  (*See* 2d Am. Compl. ¶¶ 37–39 (describing the practice of embedding); YouTube, "Embed videos & playlists," https://support.google.com/youtube/answer/171780?hl=en ("You can add a YouTube video or playlist to a website or blog by embedding it;" with instructions); Twitter, "How to embed a Tweet on your website or blog," https://help.twitter.com/en/using-twitter/how-to-embed-a-tweet ("An embedded Tweet can display photos and videos uploaded to Twitter as well as content described by a link."); Tumbr, "Embedding Tumblr Posts," https://unwrapping.tumblr.com/post/108134213757/embed-codes-tumblr-posts ("Tumblr offers embed codes to place a published post on any website that allows an HTML embed."); Facebook, "Embedded Video & Live Video Player," https://developers.facebook.com/docs/plugins/embedded-video-player ("With the embedded video player you can easily add Facebook videos and Facebook live videos to your website. You can use any public video post by a Page or a person as video or Live video source.").)  Both professional creators of web content and ordinary end-users can embed content by simply cutting and pasting this embed code into their own social media pages or elsewhere. For example, via the Tumblr web page creation social media platform, users may paste embed code into the web content they create to show content on another platform, such as a YouTube video or an Instagram photograph or video. (*See* Tumblr Help Center, "Video posts," https://tumblr.zendesk.com/hc/en-us/articles/231455628-Video-posts ("If it's on Vimeo, YouTube, or some similar site you can just open a new video post, click the globe icon, and paste its embed code or video link into the post form.").)

Internet platforms that make their users' content available for embedding also often give their users controls to restrict or prevent embedding of their content by others, by designating some or all of their content as private. (*See, e.g.*, YouTube, "Change video privacy setting,"

4

https://support.google.com/youtube/answer/157177?co=GENIE.Platform%3DDesktop&hl=en

("Public videos and playlists can be seen by and shared with anyone. Private videos and

playlists can only be seen by you and the users you choose."); Twitter, "How to embed a Tweet

on your website or blog," https://help.twitter.com/en/using-twitter/how-to-embed-a-tweet

("Embed code is not available for Tweets from people who choose to protect their Tweets.").) As

discussed below, Instagram gives its users such controls.

### C. Instagram

Instagram is a photograph- and video-sharing and social networking mobile application

(or "app") and website that has more than 800 million users.[2] It allows users to upload

photographs and videos to Instagram's servers using Instagram's mobile app or website and

thereby share them, either privately (with the user's approved followers) or publicly (with all

other Instagram users, who may post the content on Instagram or on third-party websites).[3]

Instagram also makes an "application programming interface" (or "API") available to

users, to allow them to access and use content posted by other Instagram users. (2d Am. Compl.

¶ 33.) By using Instagram's API, Instagram users may embed content that either they

themselves posted or that other users posted publicly. Instagram describes this functionality as

follows:

> Embedding Instagram posts is an easy way to add Instagram photos and videos to the
> stories you want to tell on articles or websites. You can embed your own content as well
> as photos and videos from public profiles. As always, people own their Instagram
> content, and embedded posts give the proper attribution by showing the username and
> linking back to the original content on Instagram.

---

[2] Instagram, "About Us," https://www.instagram.com/about/us/.

[3] *See* Instagram, "How do I post a photo?,"
https://help.instagram.com/442418472487929?helpref=uf_permalink (explaining how to upload
photo); Instagram, "How do I set my photos and videos to private so that only approved
followers can see them?," https://help.instagram.com/448523408565555?helpref=uf_permalink
(explaining Instagram's public and private settings).

(Instagram, "Embedding," https://www.instagram.com/developer/embedding/.)  Instagram also

describes the intended uses of the API—*including allowing other websites to share Instagram*

*content*—quite clearly:

> We provide the Instagram APIs to support several types of apps and services.
> First, we provide them to help members of our community share their own
> content with apps or services. We also support apps and services that help brands
> and advertisers understand and manage their audience, develop their content
> strategy, and obtain digital rights. ***Finally, we provide the Instagram APIs to
> help broadcasters and publishers discover content, get digital rights to media,
> and share media using web embeds***.

(2d Am. Compl. Ex. E ("Platform Policy")(emphasis added)).

Instagram governs this arrangement through an integrated set of agreements[4] with the

various parties who post and use Instagram content.  All Instagram users agree to abide by

Instagram's Terms of Use ("TOU") and Privacy Policy ("Privacy Policy").[5]  Users of

Instagram's API additionally agree to Instagram's Platform Policy ("Platform Policy," and,

collectively with the TOU and Privacy Policy, Instagram's "Policies").[6]

All of Instagram's Policies are available online to all Instagram users.[7]  Instagram notifies

all users signing up for Instagram accounts that each user agrees to the TOU and Privacy Policy

---

[4] Instagram's Policies operate as an integrated set of user agreements and incorporate one
another by reference. (*See* TOU, Basic Terms § 10 (reference and link to Platform Policy,
identified as "API Terms"), Rights §§ 1 (license granted to Instagram is subject to the Privacy
policy) & 9 (reference and link to Privacy Policy); Privacy Policy § 2 ("The use of the Instagram
API is subject to the API Terms of Use which incorporates the terms of this Privacy Policy.").)

[5] *See* TOU ("By accessing or using the Instagram website, the Instagram service, or any
applications (including mobile applications) made available by Instagram . . . you agree to be
bound by these terms of use . . . **If you do not agree to be bound by all of these Terms of Use,
do not access or use the Service**."); Privacy Policy ("Our Policy applies to all visitors, users,
and others who access the Service").)

[6] *See* Platform Policy ("By using the Instagram APIs, you agree to this policy.").

.[7] The TOU, last updated January 19, 2013, is available at
https://help.instagram.com/478745558852511. The Privacy Policy, last updated January 19,
2013, is available at https://help.instagram.com/155833707900388. The Platform Policy is

4830-9090-8515v.5 0098504-000011

when they sign up for the service, and it provides those users hyperlinks to the TOU and Privacy

Policy.  For example, users signing up on Instagram are plainly informed that by signing up they

agree to the TOU and Privacy Policy and are shown prominent links to these Policies:



(Instagram, https://www.instagram.com/, follow "Sign up" hyperlink.)

By operation of Instagram's Policies, users—including but not limited to website

publishers—can embed photographs and videos posted by Instagram users on web pages.  The

user maintains her copyright ownership in her photos and videos; Instagram obtains a non-

Exhibit E to the Second Amended Complaint.

exclusive, transferable, sub-licensable license from the users to use her content; and Instagram

conveys a sublicense to third parties who share public content (as controlled by the user's

privacy settings), using tools provided by Instagram, including embed code.[8]

**D.      The Photo and the Article**

Plaintiff owns and operates a website located at the domain name StephanieSinclair.com.

(2d Am. Compl. ¶ 15.)  She makes the Photo available on her website.  (*See*

https://stephaniesinclair.com/too-young-to-wed/.)  Plaintiff also has an Instagram user account

under the Instagram user name "stephsinclairpix," where she posts photographs.  (2d Am.

Compl. ¶¶ 31 & 34, Ex. D.)

On September 22, 2015, through her Instagram user account, Plaintiff posted a cropped

version of the Photo—that is, a version of the Photo reduced in size by removing a portion of the

original—on Instagram (Plaintiff's "Instagram Post").  (2d Am. Compl. Ex. D.)  Plaintiff

provided a textual description of her Instagram post, but that textual description did not contain

any reservation of rights or copyright notice.  (*Id.*)

Mashable published the Article, titled "10 female photojournalists with their lenses on

---

[8] *See* TOU, Rights § 1 ("Instagram does not claim ownership of any Content that you post on or
through the Service.  Instead, you hereby grant to Instagram a non-exclusive, fully paid and
royalty-free, transferable, sub-licensable, worldwide license to use the Content that you post on
or through the Service, subject to the Service's Privacy Policy, available here
http://instagram.com/legal/privacy/, including but not limited to sections 3 ('Sharing of Your
Information'), 4 ('How We Store Your Information'), and 5 ('Your Choices About Your
Information'). You can choose who can view your Content and activities, including your photos,
as described in the Privacy Policy."); Privacy Policy § 3 ("Any information or content that you
voluntarily disclose for posting to the Service, such as User Content, becomes available to the
public, as controlled by any applicable privacy settings that you set. . . . Once you have shared
User Content or made it public, that User Content may be re-shared by others.  Subject to your
profile and privacy settings, any User Content that you make public is searchable by other Users
and subject to use under our Instagram API."); Platform Policy (Instagram provides its API to
allow website publisher users and others to "discover content, get digital rights to media, and
share media using web embeds" subject to compliance with users' privacy settings and other
restrictions imposed by Instagram users on their content in their Instagram posts.).

social justice," on March 19, 2016.  (*See* 2d Am. Compl. ¶ 24 (incorrectly stating March 16,

2016; Exs. B & C (URL and dateline reflecting publication date).)  The Article contained ten

photographs.  (2d Am. Compl. ¶ 30.)  Plaintiff alleges eight of those ten photographs were

hosted directly on Mashable's servers, but she admits the Article embedded Plaintiff's Instagram

post.  (2d Am. Compl. ¶¶ 30, 37–39 & 49.)  In other words, the embed code in the applicable

HTML instructions used Instagram's API to cause Instagram's servers to show the Instagram

Post to viewers of the Article. (*Id.*)

Plaintiff's Instagram Post was and is public, and therefore viewable by users who are not

signed in to Instagram.  (*See* Ex. D (printout of Plaintiff's Instagram Post from Instagram.com

reading, "Log in to like or comment," "Log in to Instagram," and "Log in to see photos and

videos from friends and discover other accounts you'll love.").)  It was therefore subject to terms

of Instagram's Policies that apply to content posted publicly.  Mashable was accordingly able

and authorized to embed Plaintiff's Instagram Post.

Because, as discussed above, embedding using Instagram's API links back to live content

hosted by Instagram, any change to the content changes what the embed code causes to appear

on a third-party web page.  Thus, Plaintiff could have, at any time, caused the embed code in the

Article to cease linking to, referencing and showing Plaintiff's Instagram Post by revoking her

election to make that post public or deleting the Instagram Post.  In other words, to the extent

Plaintiff objected to Mashable embedding her Instagram Post in the Article, Plaintiff had the

unique power to remove the Instagram Post from the Article in two different ways, both with the

click of a button.

In the Article, the embedded frame of Plaintiff's Instagram post was surrounded by a

large-print subtitle bearing Plaintiff's name and text discussing Plaintiff and her work. (*See* 2d

Am. Compl. Exs. B & C.)  The text read:

> Stephanie Sinclair is a photojournalist for National Geographic and the founder of the nonprofit Too Young To Wed, which aims to protect girls' rights and end child marriage.'

> She documents sensitive human rights topics internationally, with a focus on gender issues.

> Some of Sinclair's most frequent subjects are child marriage and self-immolation. Her photos have been successful in bringing more attention and, more importantly action, to the issues women face in more underdeveloped countries with problematic traditions.

The Article also featured a large-print pull-quote stating, "Sinclair's photos have brought more attention, and action, to the issues women face."

Instagram's TOU and Privacy Policy were last updated before Plaintiff created her Instagram Post and before Mashable posted the Article.  (TOU; Privacy Policy.)  Thus, at the time Plaintiff created the Instagram Post and at the time Plaintiff alleges Mashable published the Article, the relevant portions of Instagram's Policies quoted above were all publicly posted and in effect.

## II.     ARGUMENT

### A.     STANDARDS OF REVIEW

"[T]he Second Circuit has endorsed the resolution of . . . copyright questions at the pleadings stage by analyzing the complaint and incorporating by reference the documents referred to therein."  *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015) (citing *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 63-65 (2d Cir. 2010)).  To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  Although courts take the factual allegations in the complaint as true, the Court is "not bound to accept as true a

legal conclusion couched as a factual allegation" (internal quotation marks and citation omitted). *Id.* ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

This Court may consider the allegations and exhibits in the Complaint and materials incorporated by reference into or otherwise integral to the Complaint on a motion to dismiss. *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 352 (S.D.N.Y. 2014) (citing *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir. 2004)); *Boarding School Review, LLC v. Delta Career Educ. Corp.*, No. 11 Civ. 8921, 2013 WL 6670584, at *3 (Mar. 29, 2013).[9] At this motion to dismiss stage, the Court may take judicial notice of internet materials, including websites and social media posts. *See Wang v. Pataki*, 396 F. Supp. 2d 446, 458 n.2 (S.D.N.Y. 2005) ("The Court may take judicial notice of such internet material." (citing *Hotel Employees & Rest. Employees Union, Local 100 v. New York Dep't of Parks & Recreation*, 311 F.3d 534, 549 (2d Cir. 2002))*; Veronica Foods Co. v. Ecklin*, No. 16-CV- 07223-JCS, 2017 WL 2806706, at *4 (N.D. Cal. June 29, 2017) (taking judicial notice of the contents of a party's social media posts); *Moss v. Infinity Ins. Co.*, No. 15-CV- 03456-JSC, 2016 WL 7178559, at *3 (N.D. Cal. Dec. 9, 2016) (same); *cf. Patsy's Italian Restaurant, Inc. v. Banas*, 575 F. Supp. 2d 427, 443 n. 18 (E.D.N.Y. 2008), *aff'd*, 658 F. 3d 254 (2d Cir. 2011) ("It is generally proper to take judicial notice of articles and Web sites published on the Internet.").

---

[9] Should the Court determine that relevant facts and materials are not sufficiently incorporated into the Complaint or that it cannot take judicial notice of them, the Court may convert the motion to dismiss to one for summary judgment. *Schwartz v. HSBC Bank USA, N.A.*, 160 F. Supp. 3d 666, 672 (S.D.N.Y. 2016). In that event, Defendants respectfully request that the Court permit Defendants to make further evidentiary submissions in support of a motion for summary judgment.

11

**B.    MASHABLE HOLDS A SUB-LICENSE TO THE INSTAGRAM POST, A "COMPLETE DEFENSE" TO PLAINTIFF'S CLAIMS**

A copyright owner who licenses rights in her work "waives any right to assert an infringement claim against the licensee, or anyone whom the licensee is entitled to sublicense, for acts within the scope of the license or sublicense." *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 121 (S.D.N.Y. 2015); *see also Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998) ("A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement."); *Lasica v. America Online, Inc.*, No. CV 15-4230, GW (FFMx), 2015 WL 12791495, at *3 (C.D. Cal. Sept. 3, 2015) ("A copyright owner who grants a nonexclusive, limited license ordinarily waives the right to sue licensees for copyright infringement, and it may sue only for breach of contract."). "This is because the 'licensee of any of the rights comprised in the copyright, though it is capable of breaching the contractual obligations imposed on it by the license, cannot be liable for infringing the copyright rights conveyed to it.'" *Ariel (UK) Ltd. v. Reuters Grp. PLC*, No. 05 CIV. 9646 (JFK), 2006 WL 3161467, at *5 (S.D.N.Y. Oct. 31, 2006), *aff'd*, 277 F. App'x 43 (2d Cir. 2008) (quoting *United States Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 695 (2d Cir. 1991)).

In other words, a clear and valid license or sublicense to exploit a plaintiff's copyrighted content provides a "***complete defense***" to copyright infringement on a motion to dismiss and properly supports dismissal of that claim. *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d at 121. Defendants have such a complete defense.

When Plaintiff posted the Instagram Post on Instagram, she agreed to Instagram's Policies.[10] (*See* TOU ("By accessing or using the Instagram website, the Instagram service, or

---

[10] Despite Plaintiff only attaching the Platform Policy to the Complaint, Instagram's Policies incorporate one another by reference and must be read together as one document. Instagram's TOU is governed by California law, and it incorporates Instagram's Privacy Policy and Platform

any applications (including mobile applications) made available by Instagram . . . you agree to be bound by these terms of use . . . If you do not agree to be bound by all of these Terms of Use, do not access or use the Service."); Privacy Policy ("Our Policy applies to all visitors, users, and others who access the Service").) Courts in this Circuit have routinely enforced such agreements. *See*, *e.g.*, *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 469 (S.D.N.Y. 2017); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012); *Person v. Google Inc.*, 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006).

Under the Policies, Instagram obtained a license in the Instagram Post content from Plaintiff and granted a sub-license to all Instagram API users and members of the public, including Mashable. Plaintiff granted "to Instagram a non-exclusive, fully paid and royalty-free, transferable, sub-licensable, worldwide license to use the Content that you post on or through" Instagram, and Instagram authorized users of Instagram's API and the public to re-share Plaintiff's Instagram Post and, among other things, embed it through the Instagram API. (Policies cited *supra* note 8.) Mashable was a member of this class of sub-licensees.[11]

Mashable thus held a valid sub-license from Instagram that encompasses its use of Plaintiff's Instagram Post. Plaintiff's copyright infringement claim is entirely based on this validly licensed use. Therefore, Plaintiff cannot have any claim for copyright infringement against Defendants.

---

Policy by reference. (*See* TOU, Basic Terms § 10 (referencing Platform Policy as "API Terms" and linking to Platform Policy), Rights §§ 1 & 9 (referencing and linking to Privacy Policy), Governing Law & Venue.) Under California law, interrelated agreements "must be read together for purposes of interpretation." *Heston v. Farmers Ins. Grp.*, 160 Cal. App. 3d 402, 417, 206 Cal. Rptr. 585, 593 (Ct. App. 1984); *see also Republic Bank v. Marine Nat'l Bank*, 45 Cal. App. 4th 919, 923, 53 Cal. Rptr. 2d 90, 92 (1996) (When one agreement incorporates other by reference, "the original agreement and those referred to must be considered and construed as one.").

[11] To the extent this Court finds Ziff Davis is responsible for the alleged actions of Mashable, this sub-license would extend to Ziff Davis, as an Instagram API user and member of the public.

Notably, Plaintiff could have stopped Mashable's embedding of her Instagram Post at any time by setting her Instagram account to private. Had Plaintiff done so, that change would have had immediate effect on Mashable's ability to embed Plaintiff's Instagram Post in Mashable's Article. In other words, Plaintiff could have revoked Mashable's ability to embed the Article with a single click, rather than bring this lawsuit.

### C. PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF AGAINST ZIFF DAVIS

"A parent corporation and its subsidiary are regarded as legally distinct entities," and both "the legal relationship between a parent and its subsidiary" and "the fact that a parent company benefits financially by virtue of its ownership of the subsidiary" are "insufficient to state a claim for copyright infringement against the parent." *Dauman v. Hallmark Card, Inc.*, No. 96 CIV. 3608 (JFK), 1998 WL 54633, at *6 (S.D.N.Y. Feb. 9, 1998). Instead, a parent company will be liable for copyright infringement by its subsidiary, under a theory of vicarious liability, "only if there is a substantial continuing involvement by the parent specifically with the respect to the allegedly infringing activity of the subsidiary." *Id.*; *see also Mayimba Music, Inc. v. Sony Corp. of Am.*, No. 12 Civ. 1094 AKH, 2014 WL 5334698, at *13 (S.D.N.Y. Aug. 19, 2014), *order suspended*, No. 12 Civ. 1094 AKH, 2015 WL 6917260 (S.D.N.Y. Apr. 30, 2015) (collecting cases).

Plaintiff does not allege that Ziff Davis took any action to infringe Plaintiff's alleged copyright. Instead, Plaintiff claims Defendant infringed Plaintiff's rights by virtue only of Mashable's act of posting the Article embedding Plaintiff's Instagram Post. (*See* 2d Am. Compl. ¶ 49 ("Defendants infringed Plaintiff's Copyrighted Image directly when Defendant Mashable caused Plaintiff's Copyrighted image to be displayed on Mashable's website using the Instagram API embedding code process, displaying the image to the public and/or making the Copyrighted

14

Image available for distribution as if Defendants had a valid license and permission to use and display Plaintiff's Image.")  Thus, Plaintiff's claim for copyright infringement against Ziff Davis requires that Plaintiff show that Ziff Davis is somehow indirectly liable for Mashable's alleged infringement, which it has not done.

Plaintiff neither expressly states a claim for vicarious liability for copyright infringement nor alleges any facts that would support such a claim (nor does it make any allegations remotely warranting a piercing of the corporate veil).

Plaintiff alleges that Ziff Davis owns the independent entity Mashable and Ziff Davis generates revenue from Mashable's website.  (2d Am. Compl. ¶ 17-18 & 21.)  It is well-settled that allegations of a legal relationship and financial benefit like these are insufficient to state a claim against Ziff Davis for alleged copyright infringement by Mashable.  *See Dauman*, 1998 WL 54633, at *6.

Plaintiff alleges that Ziff Davis provides the Privacy Policy, Terms of Use, and Cookie Policy that governs users' use of Mashable.com. (2d Am. Compl. ¶ 18.)  These allegations do not show or even concern any "substantial continuing involvement by [Ziff Davis] specifically with respect to the allegedly infringing activity" of Mashable, which Plaintiff would need to show to state a claim against Ziff Davis.  *See id.*  Plaintiff further alleges that Ziff Davis' Terms of Use contains a "Copyright Policy" identifying Ziff Davis as Mashable's agent for notifications of claimed infringement under 17 U.S.C. § 512(c) and that Ziff Davis is registered with the U.S. Copyright Office as Mashable's agent for those purposes.  (2d Am. Compl. ¶¶ 18-19; *see also* https://www.ziffdavis.com/terms-of-use.)  These allegations do not relate to Plaintiff's copyright infringement claim.  By its terms, 17 U.S.C. § 512(c) relates only to content posted on a website or other network operator's systems by a user.  *See* 17 U.S.C. § 512(c) (relieving service

4830-9090-8515v.5 0098504-000011

providers from certain types of liability "for infringement of copyright by reason of the storage at the direction of a user"); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 26–28 (2d Cir. 2012) (explicating the § 512(c) safe harbor). Here, Plaintiff claims that Mashable, and not any Mashable user, infringed Plaintiff's copyright when it posted the Article embedding the Instagram Post. (2d Am. Compl. ¶ 49.)

In short, Plaintiff has failed to allege any facts that would support a claim against Mashable's parent company Ziff Davis. On this basis, Plaintiff respectfully requests that this Court dismiss the Second Amended Complaint as against Ziff Davis.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their motion to dismiss.

Dated: New York, New York
       May 2, 2018

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ James Rosenfeld*
    James Rosenfeld

James Rosenfeld
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Tel.: (212) 489-8230
Fax: (212) 489-8340
jamesrosenfeld@dwt.com

ZIFF DAVIS, LLC
George Wukoson
114 Fifth Avenue
New York, NY 10011
Tel: 646-397-0874
george_wukoson@ziffdavis.com

*Attorneys for Defendants Ziff Davis, LLC and Mashable, Inc.*

16