UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

STEPHANIE SINCLAIR,

                    Plaintiff,

       -against-

ZIFF DAVIS, LLC, and MASHABLE, INC.,

                    Defendants.

--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 13, 2020

18-CV-790 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

      Plaintiff Stephanie Sinclair ("Plaintiff"), a professional photographer, brings this copyright suit against Mashable, Inc. ("Mashable") and its parent company, Ziff Davis, LLC ("Ziff Davis") (together, "Defendants"), alleging that Defendants infringed Plaintiff's copyright when Mashable posted one of Plaintiff's copyrighted photographs on its website. Defendants have moved to dismiss Plaintiff's Second Amended Complaint. The Court finds that Mashable used Plaintiff's photograph pursuant to a valid sublicense from Instagram, and that Plaintiff fails to state a claim for copyright infringement against Ziff Davis. Therefore, the Second Amended Complaint is DISMISSED.

## BACKGROUND

      Plaintiff is a professional photographer. (Second Amended Complaint ("SAC") ¶ 9, ECF No. 15.) Plaintiff owns an exclusive United States copyright in the image titled "Child, Bride, Mother/Child Marriage in Guatemala" (the "Photograph"). (*Id.* ¶ 47 & Ex. F.) Plaintiff maintains a publicly-searchable website to showcase her photographs to potential customers. (*Id.* ¶ 15.) Plaintiff also maintains an account on Instagram, a photograph- and video-sharing social media platform. (*Id.* ¶ 31 & Ex. D.) Plaintiff posted a copy of the Photograph to her Instagram

account, which is a "public" account, viewable by anyone. (*Id.*)

Defendant Ziff Davis is a digital media and advertising company that owns multiple online brands and print titles. (*Id.* ¶ 16.) Ziff Davis owns Defendant Mashable, a media and entertainment platform that operates the website www.mashable.com. (*Id.* ¶ 17.)

On March 11, 2016, an employee of Mashable contacted Plaintiff via email and sought to license the Photograph for use in an article about female photographers, to be published on Mashable's website. (*Id.* ¶ 22.) Mashable offered Plaintiff $50 for licensing rights to the Photograph. (*Id.*) Plaintiff did not accept Mashable's offer. (*Id.* ¶ 23.) On March 16, 2016, Mashable published an article about female photographers on its website, which included a copy of the Photograph (the "Article"). (*Id.* ¶ 24.)

Mashable used a technical process called "embedding" to incorporate the Photograph into the Article. (*Id.* ¶ 24, 36.) Embedding allows a website coder to incorporate content, such as an image, that is located on a third-party's server, into the coder's website. (*Id.* ¶ 37.) When an individual visits a website that includes an "embed code," the user's internet browser is directed to retrieve the embedded content from the third-party server and display it on the website. (*Id.* ¶ 38.) As a result of this process, the user sees the embedded content on the website, even though the content is actually hosted on a third-party's server, rather than on the server that hosts the website.[1] (*Id.* ¶ 39.)

Here, Mashable embedded in its Article the copy of the Photograph that Plaintiff had previously uploaded to the server of Instagram. Instagram uses a service called "application programming interface," or "API," to enable users to access and share content posted by other

---

[1] A more detailed explanation of the embedding process is helpfully set forth in *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 587 (S.D.N.Y. 2018) (Forrest, J.).

users whose accounts are set to "public" mode. (*Id.* ¶ 33.) Pursuant to certain Instagram policies, users can use the API to embed Instagram posts in their websites. (*Id.*) That is exactly what happened here: Mashable used the API to embed, in the Article, the copy of the Photograph that Plaintiff previously posted to her public Instagram account.

On or about January 19, 2018, Plaintiff demanded that Defendants take down the copy of the Photograph from the Article, and compensate Plaintiff for infringing on her copyright. (*Id.* ¶ 41.) Defendants refused to do so. (*Id.* ¶ 42–43.) On January 29, 2018, Plaintiff brought this copyright suit against Defendants. (ECF No. 1.) Plaintiff filed an Amended Complaint on March 15, 2018, and, with consent of Defendants, filed a Second Amended Complaint on April 10, 2018. (ECF Nos. 11, 15.) On May 2, 2018, Defendants moved to dismiss the Second Amended Complaint (the "Motion"). (ECF No. 18.)

## LEGAL STANDARD

A complaint must be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For purposes of deciding a motion to dismiss, "[a] complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted).

## DISCUSSION

### I.      Mashable Used the Photograph Pursuant to a Valid Sublicense from Instagram.

Defendants contend that Mashable used the Photograph pursuant to a valid sublicense

from Instagram, so its use of the Photograph does not infringe Plaintiff's copyright. It is well established that a copyright owner may license his or her rights in copyrighted material, including the rights of use, distribution, and sublicensing, to one or more parties. *See Davis v. Blige*, 505 F.3d 90, 98–99 (2d Cir. 2007). A copyright owner who permits a licensee to grant sublicenses cannot bring an infringement suit against a sublicensee, so long as both licensee and sublicensee act, respectively, within the terms of their license and sublicense. *See United States Naval Inst. v. Charter Commc'ns Inc.*, 936 F.2d 692, 695 (2d Cir. 1991); *cf. Spinelli v. Nat'l Football League*, 903 F.3d 185, 203 (2d Cir. 2018) (sublicensee cannot acquire valid rights in copyrighted works if sublicensor had no right to issue a sublicense).

Here, Plaintiff granted Instagram the right to sublicense the Photograph, and Instagram validly exercised that right by granting Mashable a sublicense to display the Photograph. By creating an Instagram account, Plaintiff agreed to Instagram's Terms of Use ("Terms of Use"). *See* Motion at 12–13 (quoting Terms of Use ("By accessing or using the Instagram website, the Instagram service, or any applications (including mobile applications) made available by Instagram . . . you agree to be bound by these terms of use."))[2] Plaintiff concedes that she is bound by the Terms of Use. (Opposition to Motion to Dismiss ("Opp.") at 19, ECF No. 23.)

The Terms of Use state that, by posting content to Instagram, the user "grant[s] to Instagram a non-exclusive, fully paid and royalty-free, transferable, sub-licensable, worldwide license to the Content that you post on or through [Instagram], subject to [Instagram's] Privacy

---

[2] Plaintiff annexed Instagram's' Platform Policy to the Second Amended Complaint, but did not annex any of the other Instagram policies referenced therein. (SAC Ex. E, ECF No. 15-5.). The Court takes judicial notice of Instagram's contemporaneous Terms of Use and Privacy Policy, both of which are publicly available online. *See* Fed. R. Evid. 201(b)(2); *Force v. Facebook, Inc.*, 934 F.3d 53, 59 n. 5 (2d Cir. 2019). These agreements, which are incorporated into the Platform Policy by reference, are properly considered in deciding this motion to dismiss. *See Sira*, 380 F.3d at 67. Finally, the Court notes that Instagram's policies have been updated since the infringement alleged in the Second Amended Complaint.

Policy." (Terms of Use, Rights § 1.) Pursuant to Instagram's Privacy Policy ("Privacy Policy"), Instagram users designate their accounts as "private" or "public," and can change these privacy settings whenever they wish. (Privacy Policy, Parties With Whom You May Choose to Share Your User Content § 1.). All content that users upload and designate as "public" is searchable by the public and subject to use by others via Instagram's API. (*Id* § 2.) The API enables its users to embed publicly-posted content in their websites. (Platform Policy, Preamble.). Thus, because Plaintiff uploaded the Photograph to Instagram and designated it as "public," she agreed to allow Mashable, as Instagram's sublicensee, to embed the Photograph in its website.

Plaintiff advances a number of objections to this interpretation of her agreements with Instagram, but none is persuasive.

First, Plaintiff argues that Mashable's failure to obtain a license to use the Photograph directly from Plaintiff means that Mashable should not be able to obtain a sublicense from Instagram to use the Photograph. (Opp. at 11–12.) Plaintiff's right to grant a license directly to Mashable, and Instagram's right, as Plaintiff's licensee, to grant a sublicense to Mashable, operate independently. Mashable was within its rights to seek a sublicense from Instagram when Mashable failed to obtain a license directly from Plaintiff—just as Mashable would be within its rights to again seek a license from Plaintiff, perhaps at a higher price, if Plaintiff switched her Instagram account to "private" mode.

Second, Plaintiff argues that the Court cannot take judicial notice of the meaning of Instagram's agreements and policies because they are complex and subject to different interpretations. (Opp. at 13–15.) Although the Court takes judicial notice of the existence of Instagram's agreements and policies, *see supra* at Note 2, the Court does not purport to take judicial notice of their meaning. The meaning of these contracts is a question of law for the court, rather than a question of fact to which the principles of judicial notice would be applicable.

*See Markley v. Beagle*, 429 P.2d 129, 136 (Cal. 1967) ("In the absence of conflicting extrinsic evidence the interpretation of the contract is a question for the court."); *see also* Terms of Use, Governing Law & Venue (stating that Terms of Use are governed by California law).

Next, Plaintiff claims the agreements between Instagram and Plaintiff cannot confer a right to use the Photograph upon Mashable because Mashable is not an intended beneficiary of any of the agreements. (Opp. at 15–19.) But Mashable need not be an intended beneficiary of the agreements by which Plaintiff authorized Instagram to sublicense the Photograph in order to receive a valid sublicense from Instagram. Indeed, Plaintiff authorized Instagram to grant a sublicense to, *inter alia*, anyone who uses Instagram's API. Whether Mashable is an intended beneficiary would only matter if Mashable were attempting to enforce one of the agreements between Instagram and Plaintiff, which Mashable is not. *See Bancomer, S.A. v. Superior Court*, 52 Cal. Rptr. 2d 435, 440 (Cal. Ct. App. 1996) (discussing rights of intended and incidental beneficiaries).

Plaintiff also contends that her authorization to Instagram to sublicense the use of the Photograph is invalid because it was created by a series of complex, interconnected documents. (Opp. at 20.) Specifically, the Terms of Use establish that Plaintiff grants Instagram a sublicensable right of use, but the scope of the sublicense is detailed fully in Instagram's Platform Policy and Privacy Policy. Under California law, this practice is accepted: when one document incorporates another by reference, "the original agreement and those referred to must be considered and construed as one." *Republic Bank v. Marine Nat'l Bank*, 45 Cal. App. 4th 919, 923 (Cal. Ct. App. 1996) (quoting *Bell v. Rio Grande Oil Co.*, 23 Cal. App. 2d 436, 440 (Cal. Ct. App. 1937)). While Instagram could certainly make its user agreements more concise and accessible, the law does not require it to do so.

Plaintiff also contends that the agreements do not convey a valid sublicense because they

are "circular," "incomprehensible," and "contradictory." (Opp. at 19–22.) But Plaintiff fails to identify any inconsistent (let alone unenforceable) terms in Instagram's agreement. Plaintiff claims it is contradictory for Instagram to simultaneously demand that users respect the intellectual property rights of others when uploading content to Instagram, while also granting those users a right to share other users' public posts containing copyrighted material. Plaintiff misses the distinction between a user's initial uploading of content to Instagram, and a user's subsequent sharing of content that has already been uploaded to Instagram. In the former scenario, a user may not upload content to Instagram if doing so would violate the intellectual property rights of another person. In the latter, users must comply with Instagram's terms governing the sharing of content; however, there is no concern about copyright violation, because the user who initially uploaded the content has already granted Instagram the authority to sublicense the use of "public" content to users who share it. These requirements pose no contradiction, and enable copyright holders to avoid unlicensed sharing of their work by choosing not to publicly post their copyrighted material on Instagram.

Plaintiff also contends that Instagram violated the terms of its license by granting Mashable a sublicense to "sell" the Photograph. (Opp. at 20.) But neither Plaintiff nor Instagram has "sold" the Photograph to anyone. Instead, Instagram granted Mashable a sublicense to embed the Photograph on its website, and Mashable exercised its right pursuant to that sublicense.[3]

Finally, Plaintiff's argues that it is unfair for Instagram to force a professional photographer like Plaintiff to choose between "remain[ing] in 'private mode' on one of the most

---

[3] Because the Court finds that Instagram granted Mashable a valid license to display the Photograph, it need not reach the question, addressed in *Goldman* but unsettled in this Circuit, of whether embedding an image constitutes "display" that is capable of infringing a copyright in the image. *See Goldman*, 302 F. Supp. 3d at 596 (holding that embedding constitutes display but noting possible viability of license as a defense).

popular public photo sharing platforms in the world," and granting Instagram a right to sub-license her photographs to users like Mashable. (Opp. at 12.) Unquestionably, Instagram's dominance of photograph- and video-sharing social media, coupled with the expansive transfer of rights that Instagram demands from its users, means that Plaintiff's dilemma is a real one. But by posting the Photograph to her public Instagram account, Plaintiff made her choice. This Court cannot release her from the agreement she made.

## II. Plaintiff Fails to Allege Ziff Davis' Involvement in Mashable's Alleged Copyright Infringement.

Defendants contend that Plaintiff fails to state a claim against Ziff Davis. They are correct. Because corporations and their subsidiaries are legally distinct, "the legal relationship between a parent and its subsidiary is insufficient to state a claim for copyright infringement against the parent. . . . Rather, a parent corporation can be liable only if there is a substantial continuing involvement by the parent specifically with respect to the allegedly infringing activity of the subsidiary." *Dauman v. Hallmark Card, Inc.*, No. 96-CV-3608, 1998 WL 54633, at *6 (S.D.N.Y. 1998) (Keenan, J.) (citations omitted).

Here, Plaintiff has not pled facts that, if true, would establish Ziff Davis' involvement in the allegedly infringing activity. Plaintiff alleges that Ziff Davis owns Mashable, and that legal notices on Mashable's website, such as the "Privacy Policy," "Terms of Use," and "Cookie Policy," direct users to Ziff Davis' corresponding policies. (SAC ¶ 17–18.) Plaintiff further alleges that Mashable's "Copyright Policy" directs individuals with copyright claims to contact Ziff Davis' copyright agent, and that Mashable lists Ziff Davis as its copyright agent. (*Id.* ¶ 18–19.) None of these facts establishes that Ziff Davis had any involvement in Mashable's allegedly infringing activities, beyond the bare fact of corporate ownership; for instance, Plaintiff does not claim that Ziff Davis had any role in contacting Plaintiff, posting the Article, or embedding the

Photograph in the Article. Plaintiff therefore fails to state a claim against Ziff Davis.[4]

## CONCLUSION

For the foregoing reasons, the Second Amended Complaint is DISMISSED with prejudice. The Clerk of Court is directed to close this case. All pending motions are moot.

SO ORDERED.

Dated: New York, New York
April 13, 2020 _____/s/ Kimba M. Wood_____
KIMBA M. WOOD
United States District Judge

---

[4] Plaintiff concedes that she does not state a claim against Ziff Davis for contributory or vicarious copyright infringement, and that she does not allege any facts that would warrant a piercing of Ziff Davis' corporate veil. (Opp. at 24.)