**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **STEPHANIE SINCLAIR,** | **1:18-CV-00790 (KMW)** |
| *Plaintiff*, | |
| **v.** | |
| | **ECF CASE** |
| **ZIFF DAVIS, LLC, and MASHABLE, INC.,** | |
| *Defendants*. | **ORAL ARGUMENT REQUESTED** |

**MOTION FOR RECONSIDERATION OF APRIL 13, 2020 OPINION AND ORDER DISMISSING PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff Stephanie Sinclair ("Plaintiff") respectfully submits her motion for consideration regarding the Court's April 13, 2020 Order and Opinion granting Defendants Ziff Davis and Mashable Inc.'s Rule 12(b)(6) Motion (the "Motion")(ECF No. 18) that dismissed Plaintiff's Second Amended Complaint ("SAC") with prejudice (the "Order")(ECF No. 31). The Court found, "that Mashable used Plaintiff's photograph pursuant to a valid sublicense from Instagram, and that Plaintiff fails to state a claim for copyright infringement against Ziff Davis. Therefore, the Second Amended Complaint is DISMISSED." Id.

In her SAC, Plaintiff plead that there was no license (contract) with Instagram and no sublicense with Mashable or Ziff Davis. See SAC ¶49. Plaintiff respectfully moves to reconsider the Court's Order on the following three points. First, Mashable bears the burden of proving there is a license, not Plaintiff. Second, the Court ignored key material terms in Instagram's API Platform Policy (A. General Term 11) and disputed fact questions exist as to whether Mashable violated the API policies. Lastly, Ziff Davis controls Mashable and must remain a party. A jury would be required to answer this fact question: **Did Mashable "Comply with any requirements**

**or restrictions imposed on usage of Instagram user photos and videos ("User Content") by**

**their respective owners**?" See Instagram Platform Policy Terms (A-11).  The answer is a

resounding "no."  The Court should not decide this fact question; a jury should.

## I.  STANDARD OF REVIEW

Plaintiff moves for reconsideration under Local Rule 6.3, which is governed by the same

standard as Federal Rules of Civil Procedure 59(e) and 60(b). *In re Facebook, Inc., IPO Sec. &*

*Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014), aff'd sub nom.  *Lowinger v. Morgan*

*Stanley & Co. LLC*, 841 F.3d 122 (2d Cir. 2016).  …."reconsideration will generally be denied

unless the moving party can point to controlling decisions or data that the court overlooked."

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), as amended

(July 13, 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995).

Alternatively, the Court should grant a motion for reconsideration if the moving party

demonstrates "…the need to correct a clear error or prevent manifest injustice." *Facebook*, 43 F.

Supp. at 373 (quoting *Schoolcraft v. City of New York*, 298 F.R.D. 134, 136 (S.D.N.Y.2014)).

Here, Plaintiff respectfully submits that the Court must deny the Motion due to

overlooked data/facts, to avoid a manifest injustice and to allow discovery to develop conflicting

extrinsic evidence in the record.

## II.   MASHABLE DID NOT MEET ITS BURDEN OF PROVING THE EXISTENCE OF A BINDING CONTRACT BETWEEN SINCLAIR & INSTAGRAM, & SEPARATELY INSTAGRAM & MASHABLE

Defendant Mashable bears the burden of proof that Sinclair was bound by an agreement

with Instagram and any sublicense Mashable enjoyed from all applicable agreements. *Bourne v.*

*Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir.1995)(where dispute turns on "whether a license is

held by the accused infringer," defendant must "com[e] forward with evidence of a license.") To

establish a license, Mashable is required to submit authentic, competent and admissible proof

that it obtained Instagram's explicit consent. See *Ward v. Nat'l Geographic Soc*., 208 F. Supp. 2d

429, 443 (S.D.N.Y. 2002)(citing *Gardner*, 279 F.3d at 778) (a "licensee [must] get explicit

consent from his or her licensor"). Mashable failed to provide any proof, only incomplete API

terms. In any event, the Court applied Instagram's *current* Terms to form the basis of a valid

license and sublicense.

> The Court takes judicial notice of Instagram's contemporaneous Terms of Use and
> Privacy Policy, both of which are publicly available online. See Fed. R. Evid. 201(b)(2);
> *Force v. Facebook, Inc.*, 934 F.3d 53, 59 n. 5 (2d Cir. 2019). These agreements, which
> are incorporated into the **Platform Policy** by reference, *are properly considered in*
> *deciding this motion to dismiss*. See Sira, 380 F.3d at 67. Finally, the Court notes that
> Instagram's policies have been updated since the infringement alleged in the Second
> Amended Complaint.   Order at 4, FN 2.

> By permitting Mashable to avoid its burden, the Court unfairly prejudiced Sinclair.

**a.     Sinclair May Not Be Bound by the Instagram Terms**

Upon studied reflection, Sinclair believes she may <u>not</u> be bound by the Instagram Terms

of Use ("TOU") or have given up specific rights such as a sublicense to Mashable of her Photo.

In December 2012, Sinclair first downloaded Instagram as a mobile app. There is no proof in the

record that she affirmatively consented to the 2012 Instagram TOU in a manner that is

acceptable under California law, and denies she may be bound.

Courts have traditionally been reluctant "to enforce browsewrap agreements against

individual consumers" if a website provides "no notice to users nor prompts them to take any

affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant

buttons users must click on—without more—is insufficient to give rise to constructive notice."

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014). See also *Long v.*

*Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 867, 200 Cal. Rptr. 3d 117, 127 (2016). ("[A]

conspicuous 'terms of use' hyperlink may not be enough to alert a reasonably prudent Internet consumer to click the hyperlink.")

In December 2019, the Ninth Circuit derided a gambling app's TOU in upholding a user's defense that he was <u>not</u> bound by the Terms, colorfully holding that, the terms weren't simply ambiguous, but more importantly "the user would need Sherlock Holmes's instincts to discover the Terms" that contained the contested language. *Wilson v. Huuuge, Inc.*, 2019 U.S. App. LEXIS 37952, at *3. The court elucidated a handful of factors that would weigh against a finding sufficient notice to hold a user was bound by the TOC, including terms . . . "buried at the bottom of the page or tucked away in obscure corners of the website," especially when such scrolling is not required to use the site [or] where the terms are available ***only if users scroll to a different screen***, [or] complete a multiple-step process of clicking non-obvious links, or parse through confusing or distracting content and advertisements . . . Even where the terms are accessible via a conspicuous hyperlink in close proximity to a button necessary to the function of the website, courts have declined to enforce such agreements. Id. at 10.

Defendants failed to submit any proof that Plaintiff assented to the TOU. If Sinclair issued no license to Instagram, no sublicense to Mashable can exist.

**b**.    **Licenses Must Be Construed In Accord With the Copyright Act**

Upon general principles, a copyright license "must be construed in accordance with the purposes underlying federal copyright law." *Cohen v. Paramount Pictures Corp.*, 845 F.2d 851, 854 (9th Cir.1988) (citations omitted). And "[c]hief among these purposes is the protection of the author's rights." Id. Thus, any ambiguities in constructing the license must be resolved <u>in favor of the author</u>. S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1088 (9th Cir. 1989)(contract rules apply only to the extent such rules do not interfere with federal copyright law or policy").

4

Respectfully, the Court erred when it noted that "Instagram could certainly make its user agreements more concise and accessible," but concluded that "the law does not require it to do so." Order at *3. The law requires that such language be construed to *protect* the photographer's rights and a failure to include clear language reserves to the author any ambiguously granted rights. The Court thus erroneously construed Instagram's terms in a manner inconsistent with federal copyright law, depriving Sinclair of her rights and this "result is contrary to federal copyright policy." S.O.S., 886 F.2d at 1088.

### III. MASHABLE USED SINCLAIR'S PHOTO IN VIOLATION OF INSTAGRAM'S PLATFORM POLICY

Historically, Instagram **automatically terminated** the sublicense rights if a publisher such as Mashable violated the API Platform terms. Up until 2015, Instagram's Platform Policy explicitly made it clear that: "Your [e.g. Mashable's] rights to use the Instagram APIs *terminate automatically* if (i) you violate any of these terms."  Attached as Ex. A as Instagram API policies.[1] This critical concept should still be applicable and the Court must honor restrictions Plaintiff placed on her photo's use by Mashable, and terminate the sublicense as a remedy, or allow a jury to find that a sublicense was terminated based on Instagram's intent within that policy. Plaintiff expressly denied any license for her photo's use in the Mashable article. When Mashable went ahead and used Plaintiff's photo in the article anyway, it violated Instagram's API Platform Policies and should have automatically terminated Mashable's sub-licensing rights to the photo.

Critically, both the Court and Mashable in its Motion[2] [ECF No. 19] and reply brief [ECF

---

[1] https://web.archive.org/web/20120412164025/http:/instagram.com/legal/terms/api.
[2] Mashable references the API policy by burying it on page 8, FN 8 of its Motion:  "Instagram provides its API to allow website publisher users and others to 'discover content, get digital rights to media, and share media using web embeds' subject to compliance with users' privacy

No. 28] avoid referencing whether Mashable violated the Instagram Platform Policy. Even if, arguendo, Sinclair agreed to the TOU with Instagram, Mashable has failed to submit uncontradicted evidence proving that it fully complied with all the terms of the Instagram Platform Policy. In fact, the opposite is likely true.

Plaintiff has submitted written proof in the SAC that she denied Mashable any type of license which is extrinsic evidence that she placed a clear "requirement or restriction" on the use of her Photo. See Ex. A of SAC (email chain with Mashable). Sinclair owns her "User Content" as acknowledged by Instagram. The Instagram Platform Policy requires that Mashable (as an alleged sublicensee under the API) "**Comply with any requirements or restrictions imposed on usage of Instagram user photos and videos ("User Content") by their respective owners. You are solely responsible for making use of User Content in compliance with owners' requirements or restrictions**.[3]

In construing the existence of the licenses, the Court notes that Instagram's Terms have changed since 2016. Order at *4. Instagram's API Platform policy also appears to have changed over time, including in November 2015, a few months before the Mashable article was published with Sinclair's Photo.[4] Plaintiff pursued a copyright infringement claim by attempting to enforce an Instagram policy and is requesting that a jury make a finding on whether Mashable's sublicense to this photo terminated automatically upon Mashable using the photo after Plaintiff had previously restricted its use by expressly denying a license to Mashable.

---

settings and other restrictions imposed by Instagram users on their content in their Instagram posts.)."  Note this is NOT even the full actual API policy, but Mashable's misleading paraphrasing that glosses over the restrictions Instagram placed on the use of the API.

[3] See current API Platform policyA-11at: https://www.instagram.com/about/legal/terms/api/.
[4] https://www.instagram.com/developer/changelog/

a.      **Mashable Failed to Secure Permission from Plaintiff**

The Platform Policy reads that a publication (such as Mashable) may not "use the Instagram API to simply display User Content […] without our prior permission." Platform Policy, Section A, Paragraph 16. Here, Mashable seemingly used Instagram's API to simply "display User Content." The Platform Policy also states that "You represent and warrant that you own or have secured all rights necessary to display, distribute and deliver all content in your app **or website**."  Platform Policy, Section D, Paragraph 9. There is no evidence that Mashable first obtained Instagram's "prior permission" for this use. Thus, Mashable failed to secure from Plaintiff "all rights necessary to display" Plaintiff's work on Mashable's for-profit "website."

b.      **Mashable is attempting to enforce an agreement between Plaintiff and Instagram**

The Court found that "Mashable need not be an intended beneficiary of the agreements by which Plaintiff authorized Instagram to sublicense the Photograph in order to receive a valid sublicense from Instagram." Order at *6. Respectfully, the Court cites no case law in support of this conclusion, and goes on to find that "[w]hether Mashable is an intended beneficiary would only matter if Mashable were attempting to enforce one of the agreements between Instagram and Plaintiff, which Mashable is not." Id., citing *Bancomer, S.A. v. Superior Court*, 52 Cal. Rptr. 2d 435, 440 (Cal. Ct. App. 1996) (discussing rights of intended and incidental beneficiaries). But, this finding shows that Mashable is clearly intending to enforce an agreement between Plaintiff (the user) and Instagram. The Order is unclear as to Plaintiff's legal relationship with Mashable, which contends in its Motion that it is in "privity of contract" with Plaintiff, yet the Court finds that Mashable is not a beneficiary of an alleged Instagram/Sinclair agreement. Without enforcing the TOU and API Platform Policy terms, Instagram would be without a right to sub-license to Mashable, as a sub-license can never exist if the sub-licensor does not hold a

7

valid license to the work. *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (a valid license is a defense to claims of infringement). The Court also held that third-party beneficiary status was irrelevant because "[p]laintiff authorized Instagram to grant a sublicense to, inter alia, anyone who uses Instagram's API." Order at 6. This reasoning seems circular because the user (Plaintiff) may have granted the right to sub-license to Instagram only *conditioned* on the sub-licensees abiding by Instagram's Platform Policy. To benefit from a sub-license one must be an intended third-party beneficiary and "ambiguous" language that purports to establish the same is insufficient: *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 303 (S.D.N.Y. 2011) (citations and quotations omitted); see also *Melendez v. Vaiana*, 2017 WL 8183139, at *6 (C.D. Cal. Oct. 19, 2017) ("Each Twitter user is not an intended beneficiary of every other Twitter user's agreement."). Because Mashable has not established it was an intended beneficiary of Instagram' TOU, it cannot be considered as being an express or even implied sublicensee.

c.      **Consideration Fails as a Matter of Law**

Although a written instrument is presumptive evidence of consideration (Civ. Code, § 1614) and the burden of proof is upon the party seeking to invalidate an agreement for lack of consideration (Civ. Code, § 1615), **the presumption is rebuttable**, and lack of consideration may be shown by extrinsic evidence. *Star Pac. Investments, Inc. v. Oro Hills Ranch, Inc*., 121 Cal. App. 3d 447, 456, 176 Cal. Rptr. 546, 550 (Ct. App. 1981).

If the alleged consideration is that Plaintiff enjoyed a general benefit by using Instagram, she must be entitled to fully enjoy all the benefit which includes her right to restrict how her User-owned content is used by API users. In other words, the consideration flows from the API/Platform policies. The Court, however, may have improperly cured Mashable's defect of

proving a valid sublicense by denying Plaintiff relief to enforce violations by Mashable under the API Platform policy.  See Order at *4 ("By creating an Instagram account, Plaintiff agreed to Instagram's Terms of Use"). The Court wrongfully assumed that valid consideration existed factually as it relates to the "restrictions and requirements" Plaintiff placed on the photo in question and expected to receive the benefit of those restrictions. This factual dispute requires the presentation of evidence to determine how the Instagram agreement provided her full and valid consideration. Sinclair alternatively moves for leave of Court to add Instagram as a party should the Court decide that Plaintiff cannot enforce her rights directly against Mashable's API Policy violations.

## IV. PLAINTIFF SUFFICIENTLY PLEAD THAT ZIFF DAVIS CONTROLS MASHABLE

Plaintiff sufficiently plead under a notice pleading standard that she was suing Ziff Davis **for its control** over Mashable, Inc. SAC at ¶ 19. This allegation is sufficient to put Ziff Davis on notice that Plaintiff alleges that Ziff Davis controls Mashable. Further, no factual discovery has occurred which makes this factual dispute of controlling acts by Ziff Davis a genuine issue of material fact in dispute and not subject to dismissal at this stage.

## V. CONCLUSION

Defendants' Motion and the Order fail to show support for a claim that a contract exists between Plaintiff and Instagram and fails to address whether Mashable violated the API policies. Plaintiff prays the Court deny the Motion in its entirety and all other relief the Court deems necessary. Alternatively, should the Court grant the Motion, Plaintiff seeks leave to amend the SAC.

Dated: April 27, 2020

 /s/James Bartolomei

James H. Bartolomei, Esq.
Duncan Firm, P.A.
809 W. 3rd Street
Little Rock, Arkansas 72201
501-228-7600 phone
501-228-0415 fax
james@duncanfirm.com

Bryan D. Hoben, Esq.
1112 Main Street
Peekskill, NY 10566
347-855-4008
914-992-7135 fax
bryan@hobenlaw.com

*Attorneys for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 27th day of April, 2020, a true and correct copy of the foregoing was filed with the Court through the ECF-CM electronic filing system, which will automatically serve electronic notice of the same on the counsel of record and hard copies were delivered to the court under its rule.

<u>/s/ James Bartolomei</u>

James H. Bartolomei, Esq.
Duncan Firm, P.A.
809 W. 3rd Street
Little Rock, Arkansas 72201