UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
---------------------------------------------------------------- x
STEPHANIE SINCLAIR,

              Plaintiff,

    v.                                         Case No. 18-cv-790 (KMW)

ZIFF DAVIS, LLC, and
MASHABLE, INC.,

              Defendants.
---------------------------------------------------------------- x

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
# MOTION FOR RECONSIDERATION

DAVIS WRIGHT TREMAINE LLP

James Rosenfeld
Amanda B. Levine
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone: (212) 489-8230
Fax:     (212) 489-8340
jamesrosenfeld@dwt.com
amandalevine@dwt.com


ZIFF DAVIS, LLC

George Wukoson
114 Fifth Avenue
New York, NY 10011
Phone: (646) 397-0874
george_wukoson@ziffdavis.com

*Attorneys for Defendants Ziff Davis, LLC and Mashable, Inc.*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL BACKGROUND............................................................................................. 2

ARGUMENT ............................................................................................................................... 2

    A.    The Standard for Reconsideration Is Rigorous and Strictly Construed.................. 2

    B.    Plaintiff's Motion Fails to Meet the Strict Standard for Reconsideration .............. 4

        1.    Plaintiff Changing Her Mind about Being Bound by Instagram's Terms of Use Is Not a Valid Basis for Reconsideration ............................. 4

        2.    Plaintiff's New Argument—That The Existence of a License Must Be Decided in Her Favor—Is Improper on a Motion for Reconsideration and Inapposite in any Event ............................................ 7

        3.    Instagram's 2012 Platform Policy Has No Relevance to This Case........... 9

        4.    Plaintiff's Third-Party Beneficiary Argument Impermissibly Duplicates the Argument Made in Her Earlier Briefing ........................... 12

        5.    As This Court Already Recognized, a Valid Contract—Supported by Consideration—Existed Between Plaintiff and Instagram ................. 13

        6.    This Court Properly Held that Plaintiff Failed to Plead that Ziff Davis Controlled Mashable........................................................................ 14

CONCLUSION.......................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agence France Presse v. Morel*,
  769 F. Supp. 2d 295 (S.D.N.Y. 2011) ................................................................................... 12

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
  2009 WL 1514310 (S.D.N.Y. May 29, 2009) .................................................................. 7, 10

*ArtWear, Inc. v. Hughes*,
  202 A.D.2d 76, 615 N.Y.S.2d 689 (1st Dep't 1994) ............................................................ 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................................. 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 555 (2007) ...................................................................................................... 14

*Cohen v. Paramount Pictures Corp.*,
  845 F.2d 851 (9th Cir. 1988) ................................................................................................. 8

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012) .................................................................................... 6

*Giovanniello v. New York Law Pub. Co.*,
  2007 WL 4320757 (S.D.N.Y. Dec. 11, 2007) ........................................................................ 5

*In re Facebook Biomatric Info. Priv. Litig*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) .................................................................................. 6

*In re Facebook, Inc., IPO Sec & Derivative Litig.*,
  43 F. Supp. 3d 369 (S.D.N.Y. 2014) .................................................................................. 2, 3

*In re Houbigant, Inc.*,
  914 F. Supp. 997 (S.D.N.Y. 1996) .................................................................................... 9, 10

*Joe Hand Promotions, Inc. v. Shaikh*,
  2020 WL 1878165 (E.D.N.Y. Mar. 4, 2020) ........................................................................ 14

*Knoll v. Equinox Fitness Clubs*,
  2004 WL 439500 (S.D.N.Y. Mar. 10, 2004) .......................................................................... 5

*Long v. Provide Commerce, Inc.*,
  245 Cal. App. 4th 855 (Cal. Ct. App. 2016) ........................................................................... 6

*Lopez v. Bonanza.com, Inc.*,
   2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019) ........................................................................ 14

*McGraw-Hill Global Ed. Holdings, LLC v. Mathrani*,
   293 F. Supp. 3d 394 (S.D.N.Y. 2018) ..................................................................................... 5

*Melendez v. Vaiana*,
   2017 WL 8183139 (C.D. Cal. Oct. 19, 2017) ....................................................................... 12

*Met. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Res. Employees Int'l Union*,
   2004 WL 1943099 (S.D.N.Y. Aug. 27, 2004) ................................................................... 1, 4

*Milano v. Astrue*,
   2009 WL 1150186 (S.D.N.Y. Apr. 29, 2009) (Wood, J.), *aff'd* 382 F. App'x 4
   (2d Cir. 2010) ......................................................................................................................... 3

*Nguyen v. Barnes & Noble, Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ................................................................................................ 6

*Pena-Rosario v. Reno*,
   2000 WL 620207 (E.D.N.Y. May 11, 2000) .......................................................................... 5

*Range Road Music, Inc. v. Music Sales Corp.*,
   90 F. Supp. 2d 390 (S.D.N.Y. 2000) ....................................................................................... 3

*S.O.S., Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir. 1989) ................................................................................................ 8

*Sequa Corp. v. GBJ Corp.*,
   156 F.3d 136 (2d Cir. 1998) .................................................................................................... 4

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir.1995) ....................................................................................................... 3

*U.S. v. Sessa*,
   2011 WL 867175 (E.D.N.Y. Mar. 8, 2011) .......................................................................... 10

*Wells Fargo Bank, N.A. v. Ullah*,
   2014 WL 2117243 (S.D.N.Y. May 21, 2014) ........................................................................ 3

*Wilson v. Huuge, Inc.*,
   944 F.3d 1212 (9th Cir. 2019) ................................................................................................ 6

**Other Authorities**

Fed. R. Civ. P. § 59(e) ..................................................................................................................... 3

U.S. Dist. Ct. Rules S.D.N.Y. § 6.3 ................................................................................................ 3

Defendants Ziff Davis, LLC ("Ziff Davis") and Mashable, Inc. ("Mashable," together with Ziff Davis, "Defendants") respectfully submit this memorandum of law in opposition to Plaintiff Stephanie Sinclair's ("Plaintiff") motion for reconsideration (the "Motion") of the Court's order dated April 13, 2020, dismissing Plaintiff's Complaint in full (the "Order").

## **PRELIMINARY STATEMENT**

"A motion for reconsideration does not mean the parties get a 'do over.'" *Met. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Res. Employees Int'l Union*, 2004 WL 1943099, at *1 (S.D.N.Y. Aug. 27, 2004). But in her Motion, that is precisely what Plaintiff asks this Court for—an opportunity to make new arguments, at times directly contrary to those made in her Opposition to Defendants' Motion to Dismiss, hoping they will be more successful than those she made originally. To cite just one example, while Plaintiff previously declared under penalty of perjury that she "agreed to have been bound by [Instagram's terms]," *see* Sinclar Decl. ¶ 16, she now claims, "[u]pon studied reflection," that she did not, Mot. at 3. But, as this Court has recognized on numerous occasions, a motion for reconsideration is not a vehicle for a losing party to advance new theories, particularly ones that directly contradict its prior admissions and arguments. Reconsideration is an extraordinary remedy by which a court may reverse its own decision only if the moving party can show some argument or controlling precedent included in the underlying brief that the Court overlooked and that would change the Court's opinion. Ignoring this standard, Plaintiff fills her motion with a confusing tangle of both new arguments that could have been raised previously and arguments that were raised previously and rejected by the Court. Because Plaintiff already had a full and fair opportunity to litigate this case, and because she points to no reason why this Court should reconsider its well-reasoned decision, Plaintiff's Motion should be denied.

## PROCEDURAL BACKGROUND

On January 29, 2018, Plaintiff filed her initial complaint in this matter, alleging a single count of copyright infringement based on the appearance of one of her photographs (the "Photograph") in a Mashable article about female photojournalists. *See* ECF No. 1. She amended this complaint on March 15, 2018, *see* ECF No. 11, and again on April 10, 2018, *see* ECF No. 15, clarifying that Mashable had embedded an Instagram post of the Photograph from her public Instagram account, as distinct from copying and directly displaying the Photograph itself. On May 2, 2018, Defendants filed a motion to dismiss the Second Amended Complaint (the "SAC"), *see* ECF No. 19, and the Motion was fully briefed by August 2, 2018, *see* ECF No. 28. On April 13, 2020, this Court issued an Order granting Defendants' motion to dismiss, finding that Mashable had a valid sub-license from Instagram to embed Plaintiff's Photograph in its article and that Plaintiff failed to plead facts that would establish that Ziff Davis was involved in the allegedly infringing activities. *See* ECF No. 31. Plaintiff now asks the Court to reconsider its decision.

## ARGUMENT

Because Plaintiff does not—and cannot—argue that her Motion is the "extraordinary" one that merits this Court reconsidering its Order, Plaintiff's Motion should be denied.

### A.    The Standard for Reconsideration Is Rigorous and Strictly Construed

As an initial matter, Plaintiff's Motion gives short shrift to the rigorous standard that a moving party must meet in order to succeed on a motion for reconsideration, conveniently ignoring language from precedent cases that is unfavorable to her position. As a full reading of Plaintiff's cited cases reveals, however, "the standard of review applicable to such a motion is 'strict.'" *See In re Facebook, Inc., IPO Sec & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995)). Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of

2

scarce judicial resources." *Id.* (quoting *Ferring B.V. v. Allergan, Inc.*, 2013 WL 4082930, at *1 (S.D.N.Y. Aug. 7, 2013)).  This stringent standard "ensure[s] the finality of decisions and . . . prevent[s] the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters."  *Id.* (quoting *Polsby v. St. Martin's Press, Inc.,* 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)).

Under Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and Federal Rule of Civil Procedure 59(e), "[a] motion for reconsideration is appropriate only where the movant demonstrates that the Court has overlooked controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) (internal quotations omitted); *see also Shrader*, 70 F.3d at 257 ("The standard for granting [] a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.").  "Courts should not grant a motion for reconsideration when the moving party seeks solely to relitigate an issue already decided . . . Likewise, courts should not grant a motion for reconsideration in order to allow a party to advance new facts, issues or arguments not previously presented to the Court." *Milano v. Astrue*, 2009 WL 1150186, at *1 (S.D.N.Y. Apr. 29, 2009) (Wood, J.), *aff'd* 382 F. App'x 4 (2d Cir. 2010). "Courts must construe these motions narrowly and strictly apply the reconsideration standard to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court."  *Wells Fargo Bank, N.A. v. Ullah*, 2014 WL 2117243, at *1 (S.D.N.Y. May 21, 2014) (internal quotation marks omitted).

Put simply, "a motion for reconsideration does not mean the parties get a 'do over.'" *Met. Opera Ass'n,* 2004 WL 1943099, at *1. "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998). A "second bite" is exactly what Plaintiff seeks here.

B.  **Plaintiff's Motion Fails to Meet the Strict Standard for Reconsideration**

   1.  **Plaintiff Changing Her Mind about Being Bound by Instagram's Terms of Use Is Not a Valid Basis for Reconsideration**

Plaintiff first argues that "upon studied reflection, [she] believes she may not be bound by Instagram's Terms of Use." Mot. at 3 (emphasis in original).[1] In support, she claims that she should have argued that the Terms of Use were an unenforceable "browsewrap agreement" and states that Defendants failed to submit any proof that Plaintiff assented to Instagram's Terms of Use. *Id.* at 3-4. Plaintiff's change of heart about her arguments after the Court has issued an Order unfavorable to her is not a valid basis for reconsideration.[2]

---

[1] Plaintiff also claims that the Court looked at incorrect policies in order to establish a valid license and sub-license. As support, Plaintiff argues that the Court said that it was taking judicial notice of Instagram's "contemporaneous" terms of use and privacy policy, and the policies currently available on Instagram's website were updated in April 2018—after the alleged infringement. *See* Mot. at 3 (citing Order at 4, n.2). But "contemporaneous" means current as of a prior time, not current presently or generally, and the Court took judicial notice of the then-applicable (and still publicly available) policies. Indeed, the quotes included in pages 4 and 5 of the Order are taken directly from the policies in effect in 2016. For the avoidance of doubt, Defendants attach hereto the full Terms of Use and Privacy Policy that were in effect on March 19, 2016, the date Mashable published its article. *See* Supplemental Declaration of James Rosenfeld Exs. A and B.

[2] At one point in her Motion for Reconsideration, Plaintiff alleges that she ***did*** "plead that there was no license with Instagram and no sublicense with Mashable or Ziff Davis." Mot. at 1 (citing SAC ¶ 49). Plaintiff appears to be misreading her own filings. Paragraph 49 does not make such an allegation. At best, Paragraph 49 implies (by the words "as if") only that Plaintiff had granted Defendants no license to embed the image; it says nothing about her own license with Instagram. *See* SAC ¶ 49 ("Defendants infringed Plaintiff's Copyrighted Image directly when Defendant Mashable caused Plaintiff's copyrighted image to be displayed on Mashable's website using the Instagram API embedding code process, displaying the image to the public and/or making the Copyrighted Image available for distribution as if Defendants had a valid license and permission to use and display Plaintiff's Image."). Indeed, Plaintiff's own Declaration admits that she was "reasonably well-informed" about her rights within Instagram and has "agreed to be bound" by Instagram's policies. *See* Sinclair Decl. ¶ 16. This necessarily includes Instagram's right to sub-license rights in the Photograph.

4

It is well-established that "[a] motion for reconsideration is not an invitation for parties to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's ruling." *McGraw-Hill Global Ed. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 397 (S.D.N.Y. 2018) (internal quotes and citation omitted).

Here, however, Plaintiff not only failed to raise her browsewrap argument in her Opposition to Defendants' Motion to Dismiss, she took a directly contrary position, previously admitting:

> ***Upon signing up for and using the Instagram platform, and with each subsequent update to its terms, I feel reasonably well-informed about my rights within the platform and I have agreed to have been bound by them.***

Sinclair Decl. ¶ 16 (emphasis added); *see also* Opp'n at 19 (ECF No. 23) (Plaintiff "does not dispute the existence . . . of the Instagram policies or that she may be bound by those policies.").

Plaintiff's desire to take a contrary position now is not a basis for this Court to reconsider its decision. *See Giovanniello v. New York Law Pub. Co.*, 2007 WL 4320757, at *1 (S.D.N.Y. Dec. 11, 2007) (denying motion for reconsideration when party "had a full and fair opportunity to raise the choice of law argument in his opposition to the motion to dismiss and during oral argument but chose not to do so"); *Knoll v. Equinox Fitness Clubs*, 2004 WL 439500, at *4 (S.D.N.Y. Mar. 10, 2004) (denying motion for reconsideration when plaintiff sought to "recant [a] concession in her motion for reconsideration" because a "motion for reconsideration may not be used to . . . argue in the alternative once a decision has been made") (citation omitted); *Pena-Rosario v. Reno*, 2000 WL 620207, at *3 (E.D.N.Y. May 11, 2000) (noting that Government's position on a motion for reconsideration "directly contradict[ed] the position taken by the

Government's counsel at oral argument" and "[t]he Government's apparent change of heart does not provide grounds for a motion to reconsider").

Regardless, even if Plaintiff had made the browsewrap argument in her Opposition, it would not have been successful.  Courts in both New York and California have recognized that valid contracts are formed in circumstances identical to those here, where Plaintiff was required to create an account before posting photographs to Instagram, where the account creation page clearly contained a message to the effect that "by signing up you agree to our Terms & Privacy Policy," and where the policies were accessible via hyperlink.  *See In re Facebook Biomatric Info. Priv. Litig*, 185 F. Supp. 3d 1155, 1166 (N.D. Cal. 2016) (holding that valid contract formed when user was required to "click a 'Sign Up' box with language under it that purported to put him on notice that clicking on it also constituted assent to the user agreement"); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) (finding valid contract formed when "Sign–Up page indicated that additional action beyond merely visiting that page, namely, clicking 'Sign–Up,' would manifest agreement to the Terms of Use").  The cases that Plaintiff cites are not to the contrary—in none of these cases was the use of the website conditioned upon agreeing to clearly hyperlinked terms of use, as is the case here.  *See Wilson v. Huuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019) (refusing to enforce terms of service that were only visible upon clicking a "more" button on an app's download page and then scrolling through multiple pages, and where the app "does not even inform the user that he will be bound by those terms"); *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1178-79 (9th Cir. 2014) (refusing to enforce terms of service when party was permitted to use Barnes & Noble website without consenting to terms, which merely appeared via hyperlink at the bottom of each web page); *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 867 (Cal. Ct. App. 2016) (refusing to enforce terms of use of ProFlowers.com when party could use website

6

without consenting to terms and terms simply appeared via hyperlink at the bottom of check-out flow web pages).

In short, even if Plaintiff's new argument were proper for a motion for reconsideration, it would fail. Defendants were not required to come forth with any further proof of Plaintiff's agreement to Instagram's Terms of Use. Defendants highlighted that assenting to the Terms was a condition of creating an Instagram account, and Plaintiff expressly admitted that she was so bound. Accordingly, because Plaintiff's argument is nothing more than an attempt to use this Motion to plead in the alternative after having already foreclosed that alternative, this Court should reject it.

> **2. Plaintiff's New Argument—That The Existence of a License Must Be Decided in Her Favor—Is Improper on a Motion for Reconsideration and Inapposite in any Event**

Plaintiff next claims that this Court erred because it did not construe the Instagram license in her favor. Opp'n at 4-5. Despite including a seven-page section on contract interpretation in her Opposition Brief, *see* Opp'n at 15-22, Plaintiff never once invoked this canon of construction, and a motion for reconsideration is not a proper vehicle for Plaintiff to raise arguments that she could have raised previously. *See Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 2009 WL 1514310, at *3 (S.D.N.Y. May 29, 2009) (Wood, J.) ("[Movant] chose not to raise this argument at an earlier stage in the litigation and cannot now advance a new argument that was not previously presented to the Court.").

Even if this Court were to consider Plaintiff's new argument, it suffers from a fatal flaw. Plaintiff claims that "any ambiguities in construing the license must be resolved <u>in favor of the author</u>." Mot. at 4 (emphasis in original). But there are no ambiguities. The Court already held that the various Instagram policies clearly grant Instagram a sublicensable right of use and, in turn, grant a sublicense to API users, like Mashable. *See* Order at 5.

7

Even more fundamentally, the rule that Plaintiff asserts and applies does not exist. Plaintiff attempts to take an unremarkable proposition—that "copyright licenses are assumed to prohibit any use not authorized," *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989)—and apply that rule to the question of whether a license exists in the first place. But none of the cases that Plaintiff cites supports her ability to do so. To the contrary, "[t]he critical question [in these cases] is not the ***existence*** but the ***scope*** of the license." *Id.* (emphasis added). In *Cohen v. Paramount Pictures Corp.*, 845 F.2d 851 (9th Cir. 1988), for example, the court was required to determine whether a "synchronization license" that provided a party with the right to use a musical composition in a film necessarily also included the right to use the composition in a reproduction of the film in videocassettes distributed for home display. *Id.* at 852. The Court held that it would "frustrate the purposes of the [Copyright] Act to grant[] a right in a medium that had not been introduced to the domestic market at the time the parties entered into the agreement." *Id.* at 854. In other words, it was undisputed that a license existed; the question instead was whether the broad license covered a specific use. *Id.* Here, by contrast, the question is whether a license to Instagram and a sub-license to Mashable existed in the first place. Plaintiff does not—and cannot—point to any case law saying that this question must be answered in her favor, or even that she is entitled to a presumption as to the existence of a license.

Because Plaintiff fails to point to a controlling authority that this Court overlooked in determining that a valid license and sub-license existed, there is no reason for the Court to reconsider its decision.

### 3. Instagram's 2012 Platform Policy Has No Relevance to This Case

Admitting that Mashable had a valid sub-license to use her Photograph, Plaintiff claims that, per an earlier version of Instagram's API Platform Policy that was never applicable to the facts of this case, this sub-license should have terminated because Mashable violated Instagram's policies. *See* Mot. at 5. This argument lacks merit for three reasons:

***First***, this Court already considered and rejected Plaintiff's argument that Mashable violated Instagram's policies, and it is improper to relitigate this issue in a motion for reconsideration. As Defendants explained in their Reply, "[t]he license that Mashable could have obtained by directly approaching Ms. Sinclair was for different content – an uncropped version of the image," and it "would have granted very different rights, namely, the right to copy the photograph onto Mashable's servers and directly display it on Mashable's website" rather than merely embedding it. Reply Br. at 2. And, as the Court already correctly held, "Plaintiff's right to grant a license directly to Mashable, and Instagram's right, as Plaintiff's licensee, to grant a sublicense to Mashable, operate independently." Order at 5. "Mashable was within its rights to seek a sublicense from Instagram when Mashable failed to obtain a license directly from Plaintiff." *Id.* A finding to the contrary would lead to the nonsensical result that Mashable would have had every right to embed the Photograph had it ***avoided*** asking Plaintiff for a license (since Plaintiff admittedly included no restrictions in the Instagram caption or Photograph itself) but could not do so once it undertook a brief email exchange with Plaintiff. Plaintiff's desire to rehash this argument does not warrant reconsideration. *See In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996) ("[A motion for reconsideration] is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved.").

***Second***, in any event, Plaintiff bases her argument on an older version of Instagram's Platform Policy that has been superseded. *Id.* As Plaintiff admits, the Platform Policy was

9

changed in November 2015—four months before Mashable posted an article with the embedded Photograph—and the replacement policy did not contain the automatic termination provision of the superseded terms that Plaintiff now seeks to rely on. *Id.* Other than the conclusory statement that "[t]his critical concept should still be applicable," Plaintiff points to no substantive reason why the removed automatic termination provision should carry any weight. It simply does not apply.

*Third*, Plaintiff's continued citation to Paragraph 16 of the Platform Policy, which states, "Don't use the Instagram API to simply display User Content, import or backup content, or manage Instagram relationships, without our prior permission," is equally unpersuasive. *See* Mot. at 7. Plaintiff already cited to this provision in the operative Complaint, *see* SAC ¶ 35, and in her Opposition, *see* Opp'n at 22 (quoting Platform Policy Paragraph 16), and argued that "Instagram understands that the ability to embed content on a third party website does not give the third party user a license to do so," *id.* The Court necessarily rejected this argument, finding that Mashable had a valid sub-license under Instagram's policies. Order at 4-5. The fact that the Court did not explicitly address this specific provision when reaching its conclusion is not a valid basis for reconsideration, as "[a] court need not specifically address in minute detail each argument when it is plain that there is no merit whatsoever to them." *See U.S. v. Sessa*, 2011 WL 867175, at *1 (E.D.N.Y. Mar. 8, 2011).

Plaintiff now seeks to relitigate Paragraph 16 with a new argument on reconsideration. Plaintiff claims that Mashable violated this term and therefore any valid sub-license she had was extinguished. *See* Mot. at 7. But, again, Plaintiff cannot raise an argument for the first time on a motion for reconsideration. *See Analytical Surveys*, 2009 WL 1514310, at *3. And regardless, as stated above, the automatic termination right was removed from the Instagram Platform Policy prior to the publication of Mashable's article.

But even putting aside these points, Plaintiff's argument based on Paragraph 16 is substantively untenable. Under Plaintiff's interpretation, no party—including the original Instagram user—could ever embed a photograph from Instagram on a separate website without first asking Instagram's permission because this would constitute a "simpl[e] display" in violation of the Platform Policy. Such a reading is patently unreasonable and would contradict the express purpose of Instagram's API sub-license as enumerated in the very same Policy: "We provide the Instagram APIs to help broadcasters and publishers . . . share media using web embeds." *See* SAC, Ex. E. Indeed, as Defendants noted in their motion to dismiss, Instagram devoted an entire page of its API website to explaining to developers exactly how they could embed Instagram posts, including noting that, "You can embed your own content as well as photos and videos from public profiles." *See* Mot. to Dismiss at 5. It continues: "People own their Instagram content, and embedded posts give the proper attribution by showing the username and linking back to the original content on Instagram." *Id.* Here, rather than "simply display[ing]" the cropped Photograph, Mashable embedded Plaintiff's whole Instagram post, including Plaintiff's Instagram account name, a link to Plaintiff's post, a link allowing users to "Follow" that account, and Instagram's logo. *See* SAC, Ex. B. Paragraph 16 appears to mean that Instagram permits publishers to embed an entire post from a public Instagram account but not to display a bare photograph, detached from the post on their servers, without prior permission. But whatever it means, what it ***cannot*** mean is that—contrary to Instagram's express authorizations of embedding throughout its policies—any embed of a post by any Instagram user must be separately approved by Instagram.

In sum, the Court already interpreted Instagram's applicable Terms of Use, Privacy Policy, and Platform Policy and determined that a valid license and sub-license existed. Plaintiff's

11

argument—in essence, that she disagrees with the Court's interpretation—is not a valid basis for reconsideration.

### 4. Plaintiff's Third-Party Beneficiary Argument Impermissibly Duplicates the Argument Made in Her Earlier Briefing

As she did in her Opposition, Plaintiff again confuses two distinct legal concepts—a "third-party beneficiary" and a "sub-licensee"—and argues that "[t]o benefit from a sub-license one must be an intended third-party beneficiary." Mot. at 8. Just as this argument missed the mark the first time around, it does so now. Indeed, Plaintiff cites to no authority to support the point that a sub-licensee must be a third-party beneficiary,[3] and Defendants are unaware of any case that could support it. To the contrary, courts have recognized that a party may be a valid sub-licensee without being a third-party beneficiary. *See ArtWear, Inc. v. Hughes*, 202 A.D.2d 76, 81-82, 615 N.Y.S.2d 689, 692 (1st Dep't 1994) (holding that a valid sub-licensee was not a third-party beneficiary to original licensing agreement). In line with this precedent the Court aptly held, "Mashable need not be an intended beneficiary of the agreements by which Plaintiff authorized Instagram to sublicense the Photograph in order to receive a valid sublicense from Instagram." Order at 6. There is no reason for the Court to deviate from this holding now.

Finally, the Court correctly determined that Defendants are not attempting to "enforce" the agreement between Plaintiff and Instagram. In other words, Defendants are not bringing a breach of contract claim against Plaintiff or Instagram for failing to comply with the terms of the license.

---

[3] The two cases that Plaintiff does cite are irrelevant—neither stands for the proposition that to be a sub-licensee, a party must necessarily also be a third-party beneficiary. In *Agence France Presse v. Morel*, 769 F. Supp. 2d 295 (S.D.N.Y. 2011), two parties who "d[id] not claim that they were . . . sublicensees" argued that they were third-party beneficiaries to a contract between the plaintiff and Twitter. The court held that there was not enough evidence at that stage of the litigation to prove that the parties were third-party beneficiaries. In so doing, the Court did not comment on the relationship between a sub-licensee and third-party beneficiary and did not state that to be a sub-licensee, a party must also be a third-party beneficiary. Similarly, in *Melendez v. Vaiana*, 2017 WL 8183139 (C.D. Cal. Oct. 19, 2017), a plaintiff was seeking to enforce the forum selection clause in defendant's user agreement with Twitter, but the court held that the plaintiff was not a third-party beneficiary of the agreement. Again, no party was attempting to demonstrate that it held a sub-license like the one granted here.

12

Instead, Defendants merely point to the Terms of Use to show the source of Instagram's authority to grant sub-licenses. Plaintiff's argument is, therefore, entirely without merit.

### 5. As This Court Already Recognized, a Valid Contract—Supported by Consideration—Existed Between Plaintiff and Instagram

In a last-ditch effort to salvage her argument that Mashable could not embed the Photograph after she denied it a $50 license, Plaintiff attempts to re-package the argument, claiming that her license to *Instagram* was void for failure of consideration because she could not enforce her ability to restrict how her content is used by API users. *See* Mot at 9. As an initial matter, Plaintiff previously made this argument in her Opposition, the Court considered and rejected it, and Plaintiff is foreclosed from making it again here. *See* Opp'n at 12 ("[T]here is no contract with a 'clear and valid license' with no consideration."); *Id.* at 15 ("[T]here is a 'reasonable dispute' as to critical fact issues that required evidence to establish . . . what consideration was present."); *Id.* at 19 ("[T]here is no contract that references Defendants as a third party beneficiary that is clear and unambiguous and no consideration to be found flowing from Plaintiff to Instagram."). Defendants addressed the argument in their Reply, noting that Plaintiff could not argue failure of consideration when she also "repeatedly and explicitly concede[d] that Instagram's policies created an enforceable contract, and that she is bound by their terms." Reply at 4 n.3 (citing Opp'n at 19; Sinclair Decl. ¶ 16). And, as the Court correctly recognized, Plaintiff did not lose her ability to restrict the use of her content—she made the decision to post her Photograph on a public Instagram account, fully aware of the "expansive transfer of rights that Instagram demands from its users." Order at 8. Plaintiff had every opportunity to restrict how her content was used. Her choice not to do so does not create a failure of consideration.

### 6. This Court Properly Held that Plaintiff Failed to Plead that Ziff Davis Controlled Mashable

Finally, Plaintiff argues that she adequately pled that Ziff Davis exerted control over Mashable and, therefore, she should be permitted to proceed with litigation against Ziff Davis. But control is only a relevant concept if Plaintiff is attempting to establish vicarious or contributory infringement or in order to pierce the corporate veil. Here, as the Court already noted, Plaintiff has expressly disclaimed each of these theories of recovery, *see* Order at 9, n.4 (quoting Opp'n at 24) ("Plaintiff made no claims and alleges no facts that would support a theory of indirect or secondary copyright infringement against Ziff Davis or would warrant a piercing of the corporate veil."). Plaintiff's bare allegation of control—without specifying a theory of recovery—is irrelevant. Moreover, even if Plaintiff was attempting to recover under these theories, her conclusory allegation of control is plainly insufficient to state a claim under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 555 (2007). *See Joe Hand Promotions, Inc. v. Shaikh*, 2020 WL 1878165, at *5 (E.D.N.Y. Mar. 4, 2020) ("[T]he weight of authority in this Circuit requires more than a formulaic recitation that the [] defendants exercised control.") (citation omitted); *Lopez v. Bonanza.com, Inc.*, 2019 WL 5199431, at *23 (S.D.N.Y. Sept. 30, 2019) (allegation that defendant had "direct control over the products sold from its website and ha[d] the ability to monitor and control the infringing activity" deemed to be "too vague, conclusory, and unintelligible" to show control for purposes of vicarious infringement claim). Thus, Plaintiff has failed to state any reason why this Court should reconsider its holding concerning Ziff Davis.

## **CONCLUSION**

Plaintiff's arguments on this Motion are either repetitions of her prior unsuccessful arguments or are new legal theories that she failed to advance in her earlier briefing, despite having every opportunity to do so. For these reasons, Defendants respectfully request that this Court deny Plaintiff's Motion for Reconsideration and grant them such other and further relief as this Court deems appropriate.

Dated: May 11, 2020

                                                Respectfully submitted,

                                                DAVIS WRIGHT TREMAINE LLP

                                                By: */s/ James Rosenfeld*

                                                James Rosenfeld
                                                Amanda B. Levine
                                                DAVIS WRIGHT TREMAINE LLP
                                                1251 Avenue of the Americas 21st Floor
                                                New York, New York 10020
                                                Phone: (212) 489-8230
                                                Fax:   (212) 489-8340
                                                jamesrosenfeld@dwt.com
                                                amandalevine@dwt.com

                                                ZIFF DAVIS, LLC

                                                George Wukoson
                                                114 Fifth Avenue
                                                New York, NY 10011
                                                Phone: (646) 397-0874
                                                george_wukoson@ziffdavis.com

                                                *Attorneys for Defendants Ziff Davis, LLC*
                                                *and Mashable, Inc.*