UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE SINCLAIR,<br><br>　　　　　*Plaintiff*,<br>v.<br><br>ZIFF DAVIS, LLC, and MASHABLE, INC.,<br><br>　　　　　*Defendants*. | 1:18-CV-00790<br>(KMW)<br><br>ECF CASE<br><br>ORAL ARGUMENT REQUESTED |

**REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR RECONSIDERATION OF APRIL 13, 2020 OPINION AND ORDER DISMISSING PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff Stephanie Sinclair ("Plaintiff") respectfully submits her Reply to Defendants' Opposition (the "Opp.")(ECF 34) to Plaintiff's Motion for Reconsideration (ECF 32) of the Court's April 13, 2020 Order and Opinion granting Defendants Ziff Davis and Mashable Inc.'s Rule 12(b)(6) Motion (the "Motion")(ECF 18) which dismissed Plaintiff's Second Amended Complaint ("SAC") with prejudice (the "Order")(ECF 31).

**PRELIMINARY STATEMENT**

Plaintiff submits her motion for reconsideration and this reply under local Rule 6.3 and Federal Rules of Civil Procedure 60(b). She limits her reply to narrow two key issues and shows how Defendants avoided those issues like the plague, sidestepping the issues in their Motion (ECF No. 18), their Reply (ECF No. 28), and Opposition (ECF. No. 34). Mashable framed the Motion that swayed the Court into overlooking these two critical unsolved issues:

　　A.　　How did Instagram grant Mashable a sublicense?

　　B.　　Did Mashable violate Instagram's API Platform Policy thus losing any

right to a sublicense (A. General Term 11, 12 and 16)? If Mashable violated Instagram's

API Platform Policy, what is the remedy for such violation(s)? *Id*.

## I.     ARGUMENT

Contrary to Mashable's Opp., Plaintiff generally focuses her reply on unaddressed issues that are not trivial, immaterial or simple minutiae. She respectfully implores the Court to reconsider its Order and directly address the two issues that were overlooked. A simple reading of the Instagram Terms of Use must not summarily dispose of this case. Plaintiff respectfully submits that the Court must deny the Motion because it overlooked critical issues thereby denying Plaintiff a full and fair opportunity to enforce her intellectual property rights under the Copyright Act, resulting in a manifest injustice that unfairly prejudices her and leaves the photography world uncertain about certain rights on Instagram.

### A.     MASHABLE FAILED TO MEET ITS BURDEN OF PROOF AS TO HOW IT OBTAINED A SUBLICENSE FROM INSTAGRAM

Central to Mashable's defense is its unsubstantiated and unproven claim to have possessed a valid sublicense from Instagram to use Plaintiff's photo. The Second Circuit has held that a license by an accused infringer is an affirmative defense.[1] The affirmative defense of a license requires at minimum "a meeting of the minds between the licensor and licensee such that it is fair to infer that the licensor intended to grant a nonexclusive license." *Assoc. Press v. Meltwater U.S. Holdings, Inc.*, 931 F.Supp.2d 537, 562 (S.D.N.Y. 2013). As this Court has held, "[t]here can be no meeting of the minds ... where essential material terms are missing." *Vian v. Carey*, No. 92-CV-0485 (MBM), 1993 WL 138837, at *3 (S.D.N.Y. Apr. 23, 1993).

Nowhere has Mashable put in the record any proof as to *how* Instagram "validly exercised" its right in granting Mashable a sublicense of Plaintiff's photo. Despite this, the Court inferred the

---

[1] See e.g. *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995).

2

existence of a valid sublicense simply by virtue of Mashable's use of Instagram's API, holding that "Plaintiff granted Instagram the right to sublicense the Photograph, and Instagram validly exercised that right by granting Mashable a sublicense to display the Photograph." Order at 4. The Court further reasoned that "the scope of the sublicense is detailed fully in Instagram's Platform Policy and Privacy Policy." Order at 6.  But is it?

Respectfully, the Court erred when it construed the existence of sublicense without having considered Mashable's evidentiary burden to prove *how* it obtained the sublicense and what Instagram did to "validly exercise that right" to Mashable. However, the inquiry cannot end here. The Court must allow discovery to determine what Instagram intended within its Platform Policy to govern API Users such as Mashable, and how a sublicense was "validly exercised."

**B.     MASHABLE FAILED TO OFFER EVIDENCE OF COMPLIANCE WITH INSTAGRAM'S API PLATFORM POLICIES**

Separately, in light of the Platform Policy containing no language defining the licensing terms between Instagram and API users regarding Instagram "User Content," there is also conflict created by the actual terms found in the Platform Policy and Mashable's position. The Platform Policy explicitly instructs API users such as Mashable to "**comply with any <u>requirements or restrictions</u> imposed on usage of Instagram user photos and videos ("User Content") by their respective owners. You are solely responsible for making use of User Content in compliance with owners' requirements or restrictions."** Notably, Section A-11 of the Platform Policy is not clear as to how or what form such "requirements or restrictions" can be communicated to an API user such as Mashable from a User such as Plaintiff.

Mashable assumes that while Plaintiff "included no restrictions in the Instagram caption or

3

Photograph itself," it ignores the legal effect that it had already been expressly denied a license by Plaintiff for the same photo used in the same Mashable article. Impliedly, Mashable brags that no type of "restriction" by Plaintiff can ever void or extinguish its authority to a sublicense, going so far as to suggest that a finding to the contrary would result in a "nonsensical" outcome. Opp. at 9. This is precisely why fact discovery must address this issue rather than summarily granting Mashable the benefit of the doubt.

In its Order, the Court failed to address the substance and application of Platform Policy Term A-11 despite Plaintiff's repeated citation of the policy in her SAC (ECF 15 at 8) and her Opp. to the Motion (ECF 23 at 1, 9, 10, and 22). With the issue overlooked in the Order (ECF 31), Plaintiff again referred to Term A-11 in her Motion for Recon. (ECF 32 at 1, 2, and 6). This was not her attempt to relitigate an issue already decided, but a critical issue overlooked. Plaintiff respectfully urges, now as she did then, that it was clear error and a manifest injustice for the Court to have overlooked the material and specific provisions of Instagram's Platform Policy, failing to cite any specific language of the Platform Policy in the Order that allegedly contained operative language by which Mashable gained its sublicense.

Additionally, Mashable indisputably violated Term A-12 of the Platform Policy. On or about January 19, 2018, Plaintiff demanded that Mashable (through Ziff Davis's agent) take her photo down. See SAC ¶ 41. Mashable refused. Id. ¶ 42. Instagram's Platform Policy A-12 reads: "**Remove within 24 hours any User Content or other information that the owner asks you to remove**." Mashable clearly violated this term A-12 despite a clear directive from Instagram of its requirements to do so. Now it stands to escape liability.

Tellingly, Mashable's Opposition takes great pains to avoid any analysis or direct reference

4

to the plain language of Instagram's Platform Policy at A-11 or A-12. Neither is cited in any brief Mashable has filed to date nor was addressed by the Court.

### i. Instagram allows users to resolve disputes in court.

Historically, Instagram automatically terminated a Platform User's (such as Mashable) rights under the Platform Policy if the Platform User violated any terms of the Platform Policy.[2] While Plaintiff previously acknowledged Instagram repealed this draconian language in November 2015 from its Platform Policy, Instagram seemingly never replaced the termination language. Instead, Instagram's Terms of Use and Platform Policy are silent as to how disputes of general User versus Platform User are resolved or litigated. However, it is reasonable to interrupt that Instagram contemplated that disputes regarding violations of its API Policy be left to the courts as it relates to intellectual property such as copyrights. Under the "How We Will Handle Disputes" section of the Terms of Use, Instagram expressly notes that: "**The following claims don't have to be arbitrated and may be brought in court: disputes related to intellectual property (like copyrights and trademarks),** *violations of our Platform Policy*…" While this clause may apply to disputes between Instagram and a User, Instagram clearly left the door open for Users (such as Sinclair) to retain the right to enforce alleged "violation of [Instagram's] Platform Policy" in a court of law. Nowhere in the Terms of Use or Platform Policy is there any dispute resolution language that controls disputes between Users versus Users, or Users (Sinclair) versus Platform Users (Mashable). Logically, Instagram seems to want to avoid acting as both judge and jury on copyright disputes and violations of its Platform Policy.

---

[2] "Your rights to use the Instagram APIs terminate automatically if (i) you violate any of these terms.." Ex. A to Motion for Reconsideration.

5

A motion to dismiss is not the corrent procedure to decide a dispute of fact regarding whether Mashable committed violations of the Platform Policy.

**C.    MASHABLE PEDDLES OTHER LEGAL FICTIONS**

Mashable claims that "Plaintiff already had a full and fair opportunity to litigate this case." Opp. at 1.  No fact discovery has occurred. No deposition has been taken. Mashable has never proved *how* it actually obtained a sublicense, but framed the issue as if that authority was automatic. Case closed. Instagram has not authenticated or explained what it intended when it wrote two contradictory terms ("Don't use the Instagram API to simply display User Content import or backup content, or manage Instagram relationships ... without our prior permission" pitted squarely against "We provide the Instagram APIs to help broadcasters and publishers . . . share media using web embeds.") Mashable should not be granted the benefit of the doubt that one term takes priority over another conflicting term.

Mashable invents another legal fiction in claiming Plaintiff's attack on a sublicense would "contradict the express purpose of Instagram's API sub-license as enumerated in the very same Policy: 'We provide the Instagram APIs to help broadcasters and publishers . . . share media using web embeds.'" Opp. at 11. As noted above, language creating a sublicense for "User Content" cannot be found anywhere in the API Policy or what Instagram does to exercise such.  Mashable nevertheless uses this fiction as its foundation for yet another untenable claim, this time exposing the ambiguity faced by Users and Mashable alike:

> "Paragraph 16 [of the Platform Policy] ***appears*** to mean that Instagram permits publishers to embed an entire post from a public Instagram account but not to display a bare photograph, detached from the post on their servers, without prior permission. ***But whatever it means***, what it cannot mean is that—contrary to Instagram's express authorizations of embedding throughout its policies—any embed of a post by any

6

Instagram user must be separately approved by Instagram." Id. (emphasis added)

This again fails to address the effect of Platform Policy (A-11) whereby Instagram retains rights for a User (perhaps rights a User may not even be aware until they hire lawyers) to place restrictions or requirements on her User Content. It also makes a leap of factual logic and failing to connect-of-the-dots that Mashable in fact obtained "express permission" from Instagram. The record is void of this proof. The Court's Order leaves Plaintiff and Users generally asking the question, what do Paragraphs 11 and 16 mean in the API Platform Policy for Users like Sinclair?

Finally, Mashable's position cannot be cured when it boasts that the:

> ...Court correctly recognized, Plaintiff did not lose her ability to restrict the use of her content—she made the decision to post her Photograph on a public Instagram account, fully aware of the "expansive transfer of rights that Instagram demands from its users." Order at 8.  Plaintiff had every opportunity to restrict how her content was used.

Opp. at 13.

Nowhere can Mashable point to Plaintiff failing to place an acceptable type of restriction on her User Content as defined by Instagram. This is clearly a disputed fact question.

Mashable further rests its hat on the Court holding that, "Plaintiff's right to grant a license directly to Mashable, and Instagram's right, as Plaintiff's licensee, to grant a sublicense to Mashable, **operate independently**." Order at 5 (emphasis added). Within Instagram's ecosystem, a sublicense can only exist as an operation of law if two actions occur. First, Mashable's authority to receive the sublicense is contingent on Instagram exercising its right to issue the sublicence as noted above. Second, Mashable's ability to exercise that sublicense is contingent on it complying with the Platform Policy, including General Terms A-11, A-12 and A-16.  Failure of either of the two actions precludes the existence of a sublicense to Mashable.

7

Mashable's supposed sublicense fails both conditions. As previously noted, Mashable has put no evidence into the record regarding Instagram's exercise of such a sublicense (because no sublicensing language exists in the Platform Policy). Also, as previously noted, Mashable did not comply with Section A-11, A-12 or A-16 of the Platform Policy because it did not comply with Plaintiff's restrictions on the use of her photo, her takedown notice and Mashable "simply displayed User Content" without Instagram's prior permission. Respectfully, it was a clear error for the Court to hold that Mashable's and Plaintiff's rights operate independently of one another.

## II.   CONCLUSION

For the reasons set forth above and in Plaintiff's Motion For Reconsideration of the Order, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss in full. Alternatively, should the Court grant the Motion, Plaintiff seeks leave to amend her SAC.

Dated: May 13, 2020

    Respectfully submitted,

    /s/James Bartolomei
    James H. Bartolomei, Esq.
    Duncan Firm, P.A.
    809 W. 3rd Street
    Little Rock, Arkansas 72201
    501-228-7600 phone
    501-228-0415 fax
    james@duncanfirm.com

    Bryan D. Hoben, Esq.
    1112 Main Street
    Peekskill, New York 10566
    347-855-4008
    914-992-7135 fax
    bryan@hobenlaw.com

    *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of May, 2020, a true and correct copy of the foregoing was filed with the Court through the ECF-CM electronic filing system, which will automatically serve electronic notice of the same on the counsel of record and hard copies were delivered to the court under its rule.

/s/ James Bartolomei
James H. Bartolomei, Esq.
Duncan Firm, P.A.
809 W. 3rd Street
Little Rock, Arkansas 72201
