UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELLIOT McGUCKEN,

                              Plaintiff,

                    -v.-

NEWSWEEK LLC,

                              Defendant.

19 Civ. 9617 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Elliot McGucken is a photographer who focuses on landscapes and seascapes.  On March 13, 2019, Plaintiff posted on his Instagram account a photograph of an ephemeral lake (the "Photograph") that had appeared in Death Valley, California.  The following day, Defendant Newsweek published an article about the ephemeral lake (the "Article"), embedding Plaintiff's Instagram post of the lake as part of the Article.  Plaintiff brought this action for copyright infringement, alleging that Defendant reproduced and displayed the Photograph on its website without his consent.  Defendant moves to dismiss the action for failure to state a claim, arguing, *inter alia*, that it either had a valid sublicense to use the Photograph as a result of Plaintiff's public post on Instagram, or that its publication of the Photograph constituted fair use.  For the reasons set forth in the remainder of this Opinion, Defendant's motion is granted in part and denied in part.

# BACKGROUND[1]

## A.   Factual Background

### 1.   Plaintiff's Allegations

Plaintiff is an individual residing in Los Angeles, California, while Defendant is a limited liability company located in New York, New York.  (Am. Compl. ¶¶ 4-5).  Plaintiff operates a public Instagram account on which he posts photographs he has taken of landscapes and seascapes.  (*See* Wolff Decl., Ex. A).  On March 13, 2019, Plaintiff posted the Photograph, depicting a large lake in Death Valley National Park, to his Instagram account.  (*See id.*, Ex. B).

On March 14, 2019, Defendant published the Article, titled "Huge Lake Appears in Death Valley, One of the Hottest, Driest Places on Earth," on its website.  (*See id.*, Ex. C).  The Article noted that Plaintiff had captured photographs of the ephemeral lake and provided some quotes from Plaintiff about his observation of the lake.  (*Id.*).  Most relevantly to this action, the Article incorporated Plaintiff's Instagram post of the Photograph, through a process known as embedding.  (*See id.*; Wolff Decl., Ex. I).  As ably explained by the Honorable Kimba Wood,

---

[1]    The facts in this Opinion are drawn from Plaintiff's Amended Complaint ("Am. Compl." (Dkt. #17)), which is the operative pleading in this action.  The Court also relies on the exhibits attached to the Declaration of Nancy E. Wolff ("Wolff Decl., Ex. [ ]" (Dkt. #22)) insofar as those exhibits show Plaintiff's Instagram page, the Photograph, and the Article, all of which are incorporated by reference into the Amended Complaint.

For ease of reference, the Court refers to Defendant's opening brief as "Def. Br." (Dkt. #21); to Plaintiff's opposing brief as "Pl. Opp." (Dkt. #26); to Plaintiff's supplemental opposition brief as "Pl. Supp. Opp." (Dkt. #28); and to Defendant's reply brief as "Def. Reply" (Dkt. #34).  The Court also refers to, but does not rely on, exhibits to the Declaration of Scott Alan Burroughs as "Burroughs Decl., Ex. [ ]" (Dkt. #27).

2

> Embedding allows a website coder to incorporate content, such as an image, that is located on a third-party's server, into the coder's website. When an individual visits a website that includes an "embed code," the user's internet browser is directed to retrieve the embedded content from the third-party server and display it on the website. As a result of this process, the user sees the embedded content on the website, even though the content is actually hosted on a third-party's server, rather than on the server that hosts the website.

*Sinclair* v. *Ziff Davis, LLC*, No. 18 Civ. 790 (KMW), 2020 WL 1847841, at *1 (S.D.N.Y. Apr. 13, 2020) (internal citations omitted). At no point did Plaintiff give his consent to Defendant's use of the Photograph in the Article, nor did Defendant ever compensate Plaintiff for its use of the Photograph. (Am. Compl. ¶ 10).

On April 1, 2019, Plaintiff registered the Photograph with the United States Copyright Office, with the registration number of VA 2-145-698. (Am. Compl. ¶ 9; *id.*, Ex. B). Two days later, on April 3, 2019, Plaintiff sent a cease and desist letter to Defendant, providing notice of the putative infringement and requesting that Defendant remove the Photograph from the Article. (*Id.* at ¶ 11). However, Newsweek had not removed the Photograph or taken down the Article as of October 13, 2019. (*Id.*).

### 2. Instagram's Terms of Use[2]

Given Defendant's argument that it held a valid sublicense to the Photograph due to Plaintiff's decision to post the Photograph publicly on

---

[2] The Court takes judicial notice of Instagram's Sign-Up Page (Wolff Decl., Ex. D); Instagram's Terms of Use (*id.*, Ex. E); Instagram's Privacy Policy (*id.*, Ex. F); and Instagram's Platform Policy (*id.*, Ex. G). All four items are publicly accessible; there is

Instagram (*see* Def. Br. 13), the Court provides an overview of the various agreements governing the parties' use of Instagram. Everyone who signs up to use Instagram agrees to Instagram's Terms of Use. (Wolff Decl., Ex. D). The Terms of Use prohibit users from "post[ing] private or confidential information or do[ing] anything that violates someone else's rights, including intellectual property." (*Id.*, Ex. E at 4). The Terms of Use also provide that:

> [W]hen you share, post, or upload content that is covered by intellectual property rights …, you hereby grant to [Instagram] a non-exclusive, royalty-free, transferable, sub-licensable, worldwide license to host, use, distribute, modify, run, copy, publicly perform or display, translate, and create derivative works of your content (consistent with your privacy and application settings).

(*Id.*).

Instagram's Privacy Policy, which "applies to all visitors, users, and others who access the Service," provides that "other Users may search for, see, use, or share any of your User Content that you make publicly available through [Instagram], consistent with the terms and conditions of this Privacy Policy and our Terms of Use." (Wolff Decl., Ex. F at 2). In addition, "[s]ubject to your profile and privacy settings, any User Content that you make public is searchable by other Users and subject to use under our Instagram API." (*Id.* at

---

no dispute as to the authenticity of the items; and while the meaning of the terms in the items may be in dispute, the existence of the terms themselves is not. *See* Fed. R. Evid. 201(b)(2); *Force* v. *Facebook, Inc.*, 934 F.3d 53, 59 n.5 (2d Cir. 2019) (finding that Facebook's publicly available Terms of Service and Community Standards were subject to judicial notice). However, the Court notes that the above cited items represent Instagram's terms and policies as of February 28, 2020 (*see* Wolff Decl., Ex. D-G), and may not represent Instagram's current policies and terms.

4).[3]  The Privacy Policy notes that once a user has "shared User Content or made it public, that User Content may be re-shared by others."  (*Id.*).

Finally, Instagram's Platform Policy governs the use of the API.  (*See* Wolff Decl., Ex. G at 2).  The Platform Policy states that the Platform is provided "to help broadcasters and publishers discover content, get digital rights to media, and share media using web embeds."  (*Id.*).  However, the Platform Policy instructs users to "[c]omply with any requirements or restrictions imposed of usage of Instagram photos and videos … by their respective owners," and also prohibits users from "provid[ing] or promot[ing] content that violates any rights of any person, including but not limited to intellectual property rights."  (*Id.* at 2-3).  The Platform Policy provides that the Platform is licensed to users, but "User Content is owned by users and not by Instagram."  (*Id.* at 4).

## B.    Procedural Background

Plaintiff initiated this action on October 17, 2019, with the filing of a complaint against Defendant and other unidentified individuals.  (Dkt. #1).  On November 13, 2019, the Court scheduled an initial pretrial conference for February 20, 2020.  (Dkt. #8).  On December 6, 2019, Defendant informed the Court of its intention to file a motion to dismiss.  (Dkt. #13).  Plaintiff responded to Defendant's pre-motion letter on December 11, 2019.  (Dkt. #14).

---

[3]     The "API" or "application programming interface," is a service that "enable[s] users to access and share content posted by other users whose accounts are set to 'public' mode."  *Sinclair* v. *Ziff Davis, LLC*, No. 18 Civ. 790 (KMW), 2020 WL 1847841, at *1 (S.D.N.Y. Apr. 13, 2020).

On December 12, 2019, the Court ordered the parties to appear on January 7, 2020, for a pre-motion conference, and adjourned the initial pretrial conference *sine die*.  (Dkt. #15).  The parties appeared for the scheduled pre-motion conference on January 7, 2020, at which time the Court granted Plaintiff leave to amend his complaint and scheduled briefing for Defendant's contemplated motion to dismiss.  (Minute Entry for January 7, 2020).

On January 24, 2020, Plaintiff filed the Amended Complaint.  (Dkt. #17).  On February 28, 2020, Defendant filed its motion to dismiss and accompanying memorandum of law and declaration.  (Dkt. #20-22).  Plaintiff filed its opposing memorandum, accompanied by a declaration, on April 13, 2020.  (Dkt. #26-27).  On April 20, 2020, Plaintiff requested leave to file a supplemental opposition brief in light of Judge Kimba Wood's decision in *Sinclair*, ostensibly with Defendant's consent.  (Dkt. #28).  The Court granted Plaintiff's request on April 21, 2020 (Dkt. #29), only to be informed the same day by Defendant that Plaintiff had allegedly misrepresented his intentions regarding the supplemental brief to Defendant (Dkt. #30).  In response, the Court ruled that it would only consider those portions of the supplemental brief that directly addressed Judge Wood's decision in *Sinclair*.  (Dkt. #31).  On May 4, 2020, Defendant filed its reply brief.  (Dkt. #34).

## DISCUSSION

### A.    Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff's

favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)).  A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

That said, a court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)).  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of

7

entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

**B.      The Court Largely Denies Defendant's Motion to Dismiss**

In its motion to dismiss, Defendant does not contest that Plaintiff has alleged a viable direct claim of copyright infringement.  Instead, Defendant's motion primarily rests on two independent defenses: (i) Plaintiff's public posting of the Photograph on Instagram granted Newsweek a sublicense to use the Photograph via Instagram's embedding feature (Def. Br. 12-13), and (ii) Defendant's use of the Photograph constituted fair use as a matter of law (*id.* at 14).  The Court addresses each defense in turn.

**1.      The Court Cannot Find at This Stage That Defendant Acted Pursuant to a Valid Sublicense**

Defendant's first defense is both straightforward and relatively novel. Defendant argues that, per Instagram's various terms and policies, when Plaintiff chose to post the Photograph publicly on Instagram, he granted Instagram a sublicensable license to the Photograph.  (Def. Br. 13).  Newsweek, in turn, embedded the Photograph in the Article using Instagram's API, and in doing so exercised the sublicense that had previously been granted to Instagram.  (Def. Reply 4).

In examining Defendant's argument, this Court does not paint on a blank canvas.  Indeed, Judge Kimba Wood examined the exact same question less than two months ago — whether a web embed of a public post on Instagram can give rise to a claim of copyright infringement.  *See generally Sinclair*, 2020 WL 1847841.  In *Sinclair*, Mashable — a media

8

website — published an article in which it embedded a photograph that Sinclair had previously uploaded to and posted publicly on Instagram. *See id.* at *1. Mashable argued, and Judge Wood held, that pursuant to Instagram's various terms and policies, Sinclair had "granted Instagram the right to sublicense" the photograph at issue, and that "because Plaintiff uploaded the Photograph to Instagram and designated it as 'public,' she agreed to allow Mashable, as Instagram's sublicensee, to embed the Photograph in its website." *Id.* at *2-3.

The Court finds Judge Wood's decision to be well-reasoned and sees little cause to disagree with that court's reading of Instagram's Terms of Use and other policies. Indeed, insofar as Plaintiff contends that Instagram lacks the right to sublicense his publicly posted photographs to other users, the Court flatly rejects that argument. The Terms of Use unequivocally grant Instagram a license to sublicense Plaintiff's publicly posted content (*see* Wolff Decl., Ex. E at 4), and the Privacy Policy clearly states that "other Users may search for, see, use, or share any of your User Content that you make publicly available through" Instagram (*id.*, Ex. F at 2).

Nevertheless, the Court cannot dismiss Plaintiff's claims based on this licensing theory at this stage in the litigation. As Plaintiff notes in his supplemental opposition brief, there is no evidence before the Court of a sublicense between Instagram and Defendant. (Pl. Supp. Opp. 7-9). Although Instagram's various terms and policies clearly foresee the possibility of entities such as Defendant using web embeds to share other users' content (*see* Wolff

9

Decl., Ex. G at 2 (noting that Instagram's Platform exists in part "to help broadcasters and publishers discover content, get digital rights to media, and share media using web embeds")), none of them expressly grants a sublicense to those who embed publicly posted content.  Nor can the Court find, on the pleadings, evidence of a possible implied sublicense.  *See SHL Imaging, Inc.* v. *Artisan House, Inc.*, 117 F. Supp. 2d 301, 317 (S.D.N.Y. 2000) (noting that "[a]n implied license can only exist where an author creates a copyrighted work with knowledge and intent that the work would be used by another for a specific purpose" (citing *SmithKline Beecham Consumer Healthcare, L.P.* v. *Watson Pharms., Inc.*, 211 F.3d 21, 25 (2d Cir. 2000))).

While the Court acknowledges that it may be possible to read Instagram's various terms and policies to grant a sublicense to embedders, the Court's role on a Rule 12(b)(6) motion is to "draw all reasonable inferences in Plaintiff's favor."  *Faber*, 648 F.3d at 104.  Given the limited review permitted at this stage, the Court cannot find that Defendant acted pursuant to a sublicense from Instagram.  Accordingly, Defendant's motion to dismiss on this ground is denied.

### 2. Defendant's Embedding of the Photograph Did Not Constitute Fair Use as a Matter of Law

As a second, independent reason for dismissal, Defendant argues that its actions constituted fair use.  (Def. Br. 14-15).  The Copyright Act, under which Plaintiff brings this suit, is intended "[t]o promote the Progress of Science and useful Arts, U.S. Const. art. I, § 8, cl. 8, "by granting authors a limited monopoly over (and thus the opportunity to profit from) the dissemination of

their original works of authorship," *Authors Guild, Inc.* v. *HathiTrust*, 755 F.3d 87, 95 (2d Cir. 2014). But there are also limits upon creators' control over their own works — in particular, "the doctrine of 'fair use,' which allows the public to draw upon copyrighted materials without the permission of the copyright holder in certain circumstances." *Id.* "[T]he fair use determination is an open-ended and context-sensitive inquiry," *Cariou* v. *Prince*, 714 F.3d 694, 705 (2d Cir. 2013), but Congress has provided four nonexclusive factors that inform whether a given use is fair:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

"Fair use is an affirmative defense, and therefore Defendant bears the burden of showing that a given use is fair." *Yang* v. *Mic Network, Inc.*, 405 F. Supp. 3d 537, 542 (S.D.N.Y. 2019) (quoting *Authors Guild* v. *Google, Inc.*, 804 F.3d 202, 213 (2d Cir. 2015)). "Courts have granted motions to dismiss infringement claims based on a defendant's fair use defense when 'discovery would not provide any additional relevant information' and '[a]ll that is necessary for the court to make a determination as to fair use are the two [works] at issue.'" *May* v. *Sony Music Entm't*, 399 F. Supp. 3d 169, 188

(S.D.N.Y. 2019) (quoting *Arrow Prods., Ltd.* v. *Weinstein Co.*, 44 F. Supp. 3d 359, 368 (S.D.N.Y. 2014)).  However, as this Court has previously observed, "there is a dearth of cases granting such a motion."  *BWP Media USA, Inc.* v. *Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015).

### a.    The Purpose and Character of the Use Factor Favors Plaintiff

The first factor in the fair use inquiry, which has been described as "[t]he heart of the fair use inquiry," *Cariou,* 714 F.3d at 705 (alterations in original) (internal quotation marks omitted) (quoting *Blanch* v. *Koons,* 467 F.3d 244, 251 (2d Cir. 2006)), asks in part whether the new work "merely 'supersede[s] the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative,'" *Campbell* v. *Acuff-Rose Music, Inc.,* 510 U.S. 569, 579 (1994) (quoting *Folsom* v. *Marsh,* 9 F. Cas. 342, 348 (C.C.D. Mass. 1841) (Story, J.)); Pierre N. Leval, *Toward a Fair Use Standard,* 103 Harv. L. Rev. 1105, 1111 (1990)).  The Second Circuit has recognized that

> [i]n the context of news reporting and analogous activities, ... the need to convey information to the public accurately may in some instances make it desirable and consonant with copyright law for a defendant to faithfully reproduce an original work without alteration. Courts often find such uses transformative by emphasizing the altered purpose or context of the work, as evidenced by surrounding commentary or criticism.

*Swatch Grp. Mgmt. Servs. Ltd.* v. *Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014).  Yet the Second Circuit has specifically rejected the contention that

commentary is necessary to the fair use defense, holding that "[t]he law imposes no requirement that a work comment on the original or its author in order to be considered transformative." *Cariou,* 714 F.3d at 706. "Instead, ... to qualify as a fair use, a new work generally must alter the original with 'new expression, meaning, or message.'" *Id.* (quoting *Campbell*, 510 U.S. at 579). In general, "the more transformative the new work, the less will be the significance of other factors ... that may weigh against a finding of fair use." *Barcroft Media, Ltd.* v. *Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 351 (S.D.N.Y. 2017) (quoting *Campbell*, 510 U.S. at 579).

The commercial nature of the secondary use is also relevant; "[t]he greater the private economic rewards reaped by the secondary user (to the exclusion of broader public benefits), the more likely the first factor will favor the copyright holder and the less likely the use will be considered fair." *Swatch,* 756 F.3d at 83 (alteration in original) (internal quotation marks omitted) (quoting *Am. Geophysical Union* v. *Texaco Inc.,* 60 F.3d 913, 922 (2d Cir. 1994)); *accord Harper & Row Publishers, Inc.* v. *Nation Enters.,* 471 U.S. 539, 562 (1985) ("The fact that a publication was commercial as opposed to nonprofit is a separate factor that tends to weigh against a finding of fair use.").

On the other hand, "purposes such as criticism, comment, [and] news reporting" are set forth in the Copyright Act as prototypical examples of fair use, 17 U.S.C. § 107, and the Second Circuit has "recognized that '[a]lmost all newspapers, books and magazines are published by commercial enterprises that seek a profit.'" *Swatch,* 756 F.3d at 83 (alteration in original)

(quoting *Consumers Union of U.S., Inc.* v. *Gen. Signal Corp.,* 724 F.2d 1044, 1049 (2d Cir. 1983)).  Accordingly, though a work may be commercial in nature, where it is found to be transformative courts "do not place much significance on that fact due to the transformative nature of the work." *Cariou,* 714 F.3d at 708.

Finally, courts considering the first statutory factor are directed to consider whether a defendant acted in bad faith in its use of the copyrighted material.  *See NXIVM Corp.* v. *Ross Inst.*, 364 F.3d 471, 478 (2d Cir. 2004).  However, "while the good or bad faith of a defendant … should be considered, it generally contributes little to fair use analysis." *Ferdman* v. *CBS Interactive, Inc.*, 342 F. Supp. 3d 515, 531 (S.D.N.Y. 2018) (quoting *NXIVM Corp.*, 364 F.3d at 479 n.2); *see also Yang*, 405 F. Supp. 3d at 546 ("[T]he Second Circuit has cautioned that bad faith is not 'itself conclusive of the fair use question, or even of the first factor.'" (quoting *NXIVM Corp.*, 364 F.3d at 479)).

Comparing the Photograph with its use in the Article, as the Court must do on a motion to dismiss, the Court cannot find as a matter of law that Defendant's use of the Photograph was transformative.  Sister courts have noted that the use of a copyrighted photograph in a news article can properly be deemed transformative where the photograph itself is the subject of the story.  *See, e.g., Ferdman*, 342 F. Supp. 3d at 534 (finding that use of a photograph in an article was transformative because the central subject of the article was the existence of, and commentary on, the photograph); *Barcroft Media*, 297 F. Supp. 3d at 352 (noting that "a news report about video that has

14

gone viral on the internet might fairly display a screenshot or clip from that video to illustrate what all the fuss is about"). But that is not the case here. Plaintiff posted the Photograph as an illustration of a phenomenon he observed, and Defendant similarly used the Photograph primarily as an illustrative aid depicting the subject of the Article. *See Ferdman*, 342 F. Supp. 3d at 534 (quoting *Barcroft Media*, 297 F. Supp. 3d at 352). And while it is true that the Article incorporates quotes from Plaintiff about the taking of the Photograph, the mere addition of some token commentary is not enough to transform the use of a photograph when that photograph is not itself the focus of the article.

Defendant attempts to bolster its characterization of its use of the Photograph as transformative by relying on *Nunez* v. *Caribbean International News Corp.*, 235 F.3d 18 (1st Cir. 2000). (Def. Br. 17). In *Nunez*, a professional photographer took several photographs of Miss Puerto Rico Universe 1997, at least one of which provoked some controversy due to its risqué nature. *See* 235 F.3d at 20. Three of the photographs were subsequently published in the defendant's newspaper, without the plaintiffs' permission, as part of articles discussing the controversy around the photographs. *See id.* The First Circuit, in finding that the defendant's use was transformative, explained that

> [W]hat [was] important ... [was] that plaintiffs' photographs were originally intended to appear in modeling portfolios, not in the newspaper ... . Thus, by using the photographs in conjunction with editorial

15

> commentary, El Vocero … used the works for "a further
> purpose," by giving them a new "meaning, or message."

*Id.* at 23.

In the instant action, Defendant claims that its use was similarly transformative because it took a photograph that was intended to be "fine art landscape photography" and transformed it into news or commentary. (Def. Br. 18). But this draws too fine a distinction between the parties' uses. What was important in *Nunez* was that the defendant imbued the plaintiffs' photographs with new meaning by transforming them from their original intent — modeling photographs — into the subject of a news story. Here, Defendant imbued the Photograph with no such new meaning; the Photograph, as already noted, was incorporated into the Article merely as an illustrative aid. Therefore, Defendant's citation to *Nunez* is unpersuasive, and the Court finds that Defendant's non-transformative use of the Photograph causes the first statutory factor to lean in Plaintiff's favor.

The other subfactors that the Court must consider in this first step — the commercial use of the Photograph and whether Defendant's use was in bad faith — do not substantially alter the Court's analysis. It is clear from the pleadings that Defendant's use was commercial in nature, and Defendant does not dispute that fact. Such a use further weighs against a finding of fair use. *See Ferdman*, 342 F. Supp. 3d at 537 (citing *Harper & Row*, 471 U.S. at 562). Plaintiff also urges the Court to find that Defendant acted in bad faith. (Pl. Opp. 18). However, there is nothing in the pleadings to suggest one way or

16

another whether Defendant acted in good faith or bad faith.[4]  Therefore, this subfactor neither reinforces nor undermines the Court's finding.  The purpose and character of Defendant's use of the Photograph weighs in Plaintiff's favor.[5]

### b. The Nature of the Copyrighted Work Factor Favors Neither Party

The second fair use factor is "the nature of the copyrighted work."  17 U.S.C. § 107.  This factor requires an analysis of "[i] whether the work is expressive or creative, … with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and [ii] whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower."  *Cariou,* 714 F.3d at 709-10 (alterations in original) (internal citation and quotation marks omitted) (quoting *Blanch*, 467 F.3d at 256).  Regarding the former, "[t]he law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy."  *Harper &*

---

[4]     Plaintiff urges the Court to take note of a comment allegedly posted on his Instagram post of the Photograph, purporting to be from a Newsweek reporter and asking for permission to use the Photograph.  (Burroughs Decl., Ex. 2).  However, this comment is nowhere in Plaintiff's Amended Complaint, and the Court does not find it proper to take judicial notice of Plaintiff's exhibit.  It would therefore be improper for the Court to consider the comment on this Rule 12(b)(6) motion.  *See Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (explaining that courts adjudicating Rule 12(b)(6) motions generally do not look beyond "facts stated on the face of the complaint, … documents appended to the complaint or incorporated in the complaint by reference, and … matters of which judicial notice may be taken").

[5]     As a final matter, Defendant argues that there "is a strong presumption that the first factor favors [a] defendant if the allegedly infringing use is among the illustrative statutory categories of fair use enumerated in [17 U.S.C.] § 107" (Def. Br. 16), of which categories "news reporting" is one, *see* 17 U.S.C. § 107.  While such a strong presumption may exist, *see Hosseinzadeh* v. *Klein*, 276 F. Supp. 3d 34, 42 (S.D.N.Y. 2017) (quoting *Wright* v. *Warner Books, Inc.*, 953 F.2d 731, 736 (2d Cir. 1991)), it is nonetheless clear that the presumption alone is insufficient to support a finding that the first factor favors Defendant, *see, e.g.*, *BWP Media USA, Inc.* v. *Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 507 (S.D.N.Y. 2015).

17

*Row,* 471 U.S. at 563; *accord Authors Guild,* 755 F.3d at 96 ("The second factor
considers whether the copyrighted work is 'of the creative or instructive type
that the copyright laws value and seek to foster.'" (quoting Leval, *supra,* at
1123)).  Regarding the latter, "[t]he fact that a work is unpublished is a critical
element of its 'nature.'"  *Harper & Row,* 471 U.S. at 564.  Due to the
importance of the author's right of first publication, "the unpublished nature of
a work is a key, though not necessarily determinative, factor tending to negate
a defense of fair use."  *Id.* at 554 (internal alterations, citation, and quotation
marks omitted).

Drawing all reasonable inferences in Plaintiff's favor, the Court finds that
the second factor favors neither party.  Although Defendant does not attempt to
argue that the second factor weighs in its favor — instead asserting that the
second factor is largely inconsequential (*see* Def. Br. 19) — it certainly seems
that the Photograph required some element of creative expression through its
framing and coloration.  Indeed, Defendant itself characterized the Photograph
as a work of "fine art landscaping."  (*Id.* at 18).  Additionally, neither party
addresses whether the Photograph was previously published, although the
Court takes judicial notice of the Photograph's prior publication in the outlet
SFGate.  *See BWP Media USA, Inc.* v. *Gossip Cop Media, Inc.*, 196 F. Supp. 3d
395, 399 n.3 (S.D.N.Y. 2016) (taking judicial notice of existence of article
because it was publicly accessible and contents were readily ascertainable).
Given that the Photograph's creative nature leans in Plaintiff's favor, while its

prior publication weighs in Defendant's favor, the Court views the second factor essentially as a wash.

### c. The Amount and Substantiality Factor Favors Neither Party

The third factor in the fair use inquiry is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole."  17 U.S.C. § 107.  In examining this factor courts consider "the proportion of the original work used, and not how much of the secondary work comprises the original." *Cariou,* 714 F.3d at 710; *accord Harper & Row,* 471 U.S. at 565.  Ultimately, "[t]he question is whether 'the quantity and value of the materials used, are reasonable in relation to the purpose of the copying.'" *Blanch,* 467 F.3d at 257 (internal quotation marks omitted) (quoting *Campbell,* 510 U.S. at 586).  As courts have repeatedly emphasized, the inquiry "calls for thought not only about the quantity of the materials used, but about their quality and importance, too." *Campbell,* 510 U.S. at 587; *accord, e.g., Hollander* v. *Steinberg,* 419 F. App'x 44, 47 (2d Cir. 2011) (summary order) (finding reasonable a complete reproduction for the purposes of litigation).

In the instant action, Defendant reproduced the Photograph in its entirety.  However, "this factor 'weighs less when considering a photograph — where all or most of the work often must be used in order to preserve any meaning at all — than a work such as a text or musical composition, where bits and pieces can be excerpted without losing all value.'" *Ferdman*, 342 F. Supp. 3d at 539 (quoting *N. Jersey Media Grp. Inc.* v. *Pirro*, 74 F. Supp. 3d 605, 621 (S.D.N.Y. 2015)).  Given the purpose for which the Photograph was used in

19

the Article, it is difficult for the Court to see how less than the entirety of the Photograph could have been used.  Therefore, even affording Plaintiff the deference his allegations are due at this stage in the litigation, the Court finds that this factor is neutral.  *See id.* at 539-40 (finding the third factor to be neutral where no more of the work was taken than necessary).

### d.  The Effect of the Use Factor Favors Plaintiff

The fourth and final enumerated factor in the fair use inquiry is "the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107.  The Supreme Court has described this factor as "undoubtedly the single most important element of fair use."  *Harper & Row,* 471 U.S. at 566.  The Second Circuit has emphasized that

> The focus here is on whether defendants are offering a market substitute for the original.... [O]ur concern is not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use usurps the market of the original work.

*NXIVM Corp.*, 364 F.3d at 481-82.  Put differently, the focus of the inquiry is "on whether the copy brings to the marketplace a competing substitute for the original, … so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original."  *Yang*, 405 F. Supp. 3d at 547 (quoting *Harper & Row*, 471 U.S. at 566).  Moreover, the Court must question "not only the market harm caused by the particular infringement, but also … whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work."  *Barcroft Media*, 297 F. Supp. 3d at 355

(quoting *Bill Graham Archives* v. *Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006)). "This inquiry 'is necessarily intertwined with Factor One; the more the objective of [the] secondary use differs from that of the original, the less likely it will supplant the commercial market for the original.'" *Yang*, 405 F. Supp. 3d at 547 (quoting *Harper & Row*, 471 U.S. at 566).

Defendant notes correctly that the Amended Complaint alleges no facts regarding the existence of a market for the Photograph or any usurpation of that market by Defendant's reproduction. (Def. Br. 20-21). However, as previously noted, the burden of proving fair use is Defendant's, *see May*, 399 F. Supp. 3d at 187, and therefore it is irrelevant whether Plaintiff has pleaded market usurpation. Moreover, as the Supreme Court has noted, there is a presumption of market harm "when a commercial use amounts to mere duplication of the entirety of an original." *Campbell*, 510 U.S. at 591. As already noted in the Court's analysis of the first factor, Defendant's use of the Photograph was both commercial and a mere duplication of the original, as opposed to constituting a transformative use. Thus, the presumption applies here. *See Ferdman*, 342 F. Supp. 3d at 541 (finding a presumption of market harm applicable where the defendant's commercial use of the infringing photograph was a "duplication of the entirety of an original"). And given the applicability of the presumption and the lack of any countervailing considerations in the pleadings, the Court finds that the final factor favors Plaintiff.

In sum, the Court finds that the first and fourth factors favor Plaintiff, while the second and third factors are neutral.  Under these circumstances, it is not possible for the Court to conclude that Defendant's use of the Photograph was fair as a matter of law.  Accordingly, Defendant's motion to dismiss based on its alleged fair use of the Photograph is denied.

### 3.   **Plaintiff Has Adequately Pleaded Willfulness**

In his Amended Complaint, Plaintiff has requested that he be awarded statutory damages pursuant to 17 U.S.C. § 504(c)(2).  (Am. Compl. ¶¶ 21, 27). Such enhanced statutory damages are proper only where the copyright owner has sustained the burden of proving, and the court has found, that the defendant's infringement was committed willfully.  17 U.S.C. § 504(c)(2). Defendant argues that Plaintiff's request for enhanced damages must be dismissed because Plaintiff has only offered conclusory allegations to support his prayer for relief.  (Def. Br. 21).  This, however, is not the case.  Plaintiff alleges that he sent a cease and desist letter to Defendant regarding the Photograph, and that Defendant maintained its use of the Photograph in spite of that letter.  (Am. Compl. ¶ 11).  Although the pleadings are sparse, they are enough to raise a plausible inference that Defendant acted willfully in its infringement of the Photograph.  *See Gossip Cop*, 196 F. Supp. 3d at 411 (noting that willfulness "requires only knowledge or reckless disregard on the part of the defendant").  Accordingly, Defendant's request that Plaintiff's prayer for enhanced damages be dismissed is denied.

**C.    The Court Grants Defendant's Motion to Dismiss Plaintiff's Claims for Contributory and Vicarious Infringement**

Defendant has moved to dismiss Plaintiff's claims for contributory and vicarious infringement.  (Def. Br. 22-25).  Defendant argues that the Amended Complaint alleges no facts whatsoever to support any theory of secondary liability, and instead merely recites conclusory language.  (*Id.* at 23).  In order to allege a claim of contributory infringement, a plaintiff must allege facts showing that the defendant, with knowledge of the infringing activity, materially contributed to the infringing conduct of a third party.  *See Smith* v. *BarnesandNoble.com, LLC*, 143 F. Supp. 3d 115, 124 (S.D.N.Y. 2015).  By contrast, a claim of vicarious infringement requires a plaintiff to allege "that a defendant has declined to exercise the right and ability to supervise or control the infringing activity [by a third party] and enjoys a direct financial benefit from the infringing activity."  *Rams* v. *Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 385 (S.D.N.Y. 2016).

Defendant is correct that the Amended Complaint fails to allege any facts that would support a claim of either contributory or vicarious liability.  Indeed, apart from alleging that unidentified defendants "contributed to the infringement of Plaintiff's copyrights, or have engaged in one or more of the wrongful practices alleged herein" (Am. Compl. ¶ 6), there are no facts supporting the existence of any third parties, as both theories clearly require. All of Plaintiff's allegations regarding his claims for contributory and vicarious infringement are no more than "threadbare recitals of the elements of a cause of action," *Harris*, 572 F.3d at 72, and therefore fail to meet the pleading

23

standards required by *Iqbal* and *Twombly*.[6]  Accordingly, Defendant's motion to dismiss Plaintiff's claims for contributory and vicarious infringement is granted.

## D.      The Court Denies Plaintiff's Request for Leave to Amend

While Plaintiff "maintains that there are no deficiencies in his [Amended] Complaint," he asks the Court for leave to amend should the Court find his pleadings deficient in any way.  (Pl. Opp. 23).  Although the Court acknowledges that Federal Rule of Civil Procedure 15(a)(2) embodies a liberal policy in regard to amendments, Plaintiff's request here is denied.  The Court has already given Plaintiff the opportunity to amend his complaint, with no noticeable change to the specificity of his allegations, and Plaintiff has offered no indication as to how he would correct the deficiencies in his claims for contributory and vicarious infringement.  Indeed, as already noted, Plaintiff maintains that there are no deficiencies.  Under these circumstances, the Court sees no reason to give Plaintiff a third bite at the apple.  *See Rosner* v. *Star Gas Partners, L.P.*, 344 F. App'x 642, 645 (2d Cir. 2009) (summary order) (holding there was no abuse of discretion in denying leave to amend where plaintiffs had already been given opportunity to amend and offered no indication as to how they would correct deficiencies in complaint).

---

[6]      It is true that such conclusory language could potentially pass muster were the identities of the third parties or other details regarding Defendant's or the third parties' conduct "peculiarly within the possession and control of the defendant."  *See Rosenfeld* v. *Lenich*, 370 F. Supp. 3d 335, 348 (E.D.N.Y. 2019) (quoting *Citizens United* v. *Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018)).  However, Plaintiff has offered no information that might lead the Court to believe that such is the case.

## CONCLUSION

For the reasons set forth in this Opinion, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.  Defendant's motion to dismiss Plaintiff's claim of direct copyright infringement is DENIED, as is Defendant's motion to dismiss Plaintiff's prayer for enhanced damages.  However, Defendant's motion to dismiss Plaintiff's claims for contributory and vicarious infringement is GRANTED.  In turn, Plaintiff's request for leave to amend the Amended Complaint is DENIED.

The Clerk of Court is directed to terminate the motion at docket entry 20. On or before June 22, 2020, Defendant shall file a responsive pleading.  On or before June 29, 2020, the parties shall submit a proposed Case Management Plan, as well as the joint status letter contemplated by the Plan.

SO ORDERED.

Dated:     June 1, 2020
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge